## BRIDGEWATER *v.* THE STATE.

[No. 18,878.   Filed December 12, 1899.]

HOMICIDE.—*Malice.—Evidence.—Criminal Law.*—In the trial of one charged with homicide the evidence showed that defendant and his wife kept house, but the wife was employed as a domestic at a residence some distance from her own home, and usually remained there all day and sometimes at night; that on the day of the homicide she went to a picnic with two other women and two men, of whom the deceased was one; that on their return deceased accompanied her from the carriage to the residence where she was employed, and stood talking to her a few minutes, when defendant approached, and, without speaking, clinched deceased. A struggle ensued, and deceased was cut several times with a knife, one of the wounds penetrating his heart resulting in death. Defendant was jealous of his wife, and his distrust of her had involved him in difficulties before. *Held,* that the evidence fully justified the jury in finding that the killing was done purposely and maliciously. *pp. 561-564.*

SAME.—*Malice.—Presumption.—Criminal Law.*—Where a homicide is perpetrated by the intentional use of a deadly weapon in such manner as is likely to, and does produce death, the law presumes such homicide was committed purposely and maliciously, unless it was done in self-defense, or upon a sudden heat occasioned by such provocation as is adequate in law to reduce the killing to the grade of manslaughter. *pp. 563, 564.*

INSTRUCTIONS.—*Homicide.—Criminal Law.*—The use of the word "wilfully" in an instruction in the words "and if you are satisfied beyond a reasonable doubt, that the defendant did wilfully kill the said Ollister Wharton, but the same was done without malice, express or implied, and without premeditation, voluntarily, then you may find the defendant guilty of manslaughter," was not prejudicial to defendant. *pp.564, 565.*

SAME.—*Homicide.—Criminal Law.*—An instruction defining voluntary manslaughter as the unlawful killing of a human being, without malice, express or implied, voluntarily, upon a sudden heat, as where, upon provocation the passion has been aroused and the act is committed before sufficient time has elapsed for the passion to cool, is defective because of its failure to qualify the word "provocation" with the term "adequate or sufficient." *p. 565.*

SAME.—*Criminal Law.*—Where the court instructed the jury in the trial of a criminal cause that they were the exclusive judges of the law and the facts, no error was committed in refusing to give an

Bridgewater *v.* State.

instruction to the effect that the court's instructions were advisory only, and that the jury might disregard them and determine the law for themselves.  *pp, 565, 566.*

APPEAL AND ERROR.—*Bill of Exceptions.—Exhibits.—Criminal Law.*—Articles of clothing of the deceased and weapons with which the homicide was committed have no place in the bill of exceptions on appeal, as verbal descriptions of items of evidence of such character are sufficient, and are the only proper methods of bringing such items to the attention of the Supreme Court.  *p. 567.*

From the Marion Criminal Court.  *Affirmed.*

*J. B. Kealing, M. M. Hugg, J. C. Ruckelshaus* and *J. W. Bowlus,* for appellant.

*W. L. Taylor,* Attorney-General, *A. E. Dickey, Merrill Moores, C. C. Hadley* and *M. D. Aber,* for State.

DOWLING, J.—Indictment for murder in the first degree. Trial, and verdict of guilty of murder in the second degree. Motion for new trial overruled, and judgment on verdict. Defendant below appeals.

The insufficiency of the evidence to sustain the verdict, and error of law in giving and refusing to give instructions, are the grounds relied upon for a reversal of the judgment.

Counsel for appellant do not deny that the evidence supports a finding of guilty, but they insist that it does not sustain a finding of guilty of murder in the second degree.

The difference between murder in the second degree and manslaughter, as these crimes are defined by statute, is, that in the former the killing is done purposely and maliciously, but without premeditation; in the latter, the killing is unlawful, without malice express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act.

The inquiry upon this branch of the case is reduced to the question whether there is any evidence in the record showing that, in taking the life of the deceased, the appellant did so, purposely and maliciously.

The facts, greatly condensed, are as follows: The appellant, Bridgewater, was a married man, and was jealous of his wife. His distrust had involved him in one or more difficulties before the occurrence of the homicide for which he was convicted. Appellant and his wife kept house, but she was employed as a domestic servant at a residence some distance from her own home, and usually remained all the day, and sometimes all night at the place where she was so employed. On leaving appellant's house, on Sunday morning, August 15, 1897, appellant asked his wife to come back that afternoon, but she would not promise to do so. Without the knowledge of appellant, in company with two other women and two men, of whom the deceased was one, she went to a picnic at a place called "Crows Nest," north of Indianapolis near Broad Ripple, returning from thence at about 8 o'clock in the evening in a surrey with the other members of the party. The deceased, Ollister Wharton, accompanied Mrs. Bridgewater from the surrey across a vacant lot to the rear of the residence where she was employed. She sat down on a bench, and Wharton stood in front of her, talking to her, for perhaps five minutes, Appellant approached them, but his wife failed to recognize him, the night being a very dark one. On the near approach of appellant, Wharton, who was a total stranger to appellant, stepped back. Instantly the men clinched. A short struggle took place between them. A moment later, Wharton rushed back to the persons he had just left, saying, "I am cut." He fell on the grass and died almost immediately. Eight wounds were found on his body, one of them penetrating his heart, and three of them being in his back. Wharton's watch, with a broken chain attached, was afterwards found on the ground at the place where the struggle occurred. Appellant's hat was discovered on the porch. The appellant fled to Chicago, where he was afterwards recognized and arrested. The knife with which the homicide was committed was a large pocket knife. Statements made by appellant to the officers who arrested him

were proved on the trial, and in them he asserted that as he went onto the porch, where his wife was sitting, he was struck behind the ear; that the blow dazed him; that he clinched with his assailant, got out his knife, and cut him once or twice; that he broke loose, and that both of them got off the porch; that they struggled with each other again until they came to a small pile of sand; that appellant fell on the sand, with Wharton upon him; and that he rolled Wharton over and cut him again. There was no evidence that appellant had ever seen or heard of Wharton before the encounter on the porch. Not a word was spoken during the struggle either by Wharton or appellant. Appellant testified on his own behalf substantially to the circumstances of the homicide, as he had related them to the arresting officers. Wharton was unarmed, nothing but an unopened pocket knife being found upon his person. The wife of the appellant was generally known as Lizzie Johnson, and there was no evidence that the deceased knew that she was a married woman.

Rejecting, as the jury did, as wholly incredible, the testimony of the appellant that the deceased, without provocation, and without a word, struck the appellant as he stepped upon the porch, the evidence fully justified the jury in finding that the killing was done purposely and maliciously. The time and circumstances of the attack, its suddenness and ferocity, the weapon used, the number and character of the wounds, and their location, unmistakably indicated a relentless purpose to kill, coupled with intense malice, which, in its technical sense, is an evil disposition to do injury for the gratification of jealousy, anger, hatred, or other like passion. Malice cannot be inferred from the use of a deadly weapon alone, for such a weapon may, under proper circumstances, be employed in necessary self-defense. But where a homicide is perpetrated by the intentional use of a deadly weapon, in such manner as is likely to, and does, produce death, the law presumes such homicide was committed purposely and maliciously, unless it was done in self-defense, or upon a sud-

den heat, occasioned by such provocation as is adequate in law to reduce the killing to the grade of manslaughter. *Mc-Dermott* v. *State*, 89 Ind. 187; *Commonwealth* v. *Webster*, 5 Cush. (Mass.) 295; *Murphy* v. *State*, 31 Ind. 511; *Clem* v. *State*, 31 Ind. 480; *Boyle* v. *State*, 105 Ind. 469, 55 Am. Rep. 218; *Howell* v. *Commonwealth*, 26 Grat. 995; *Mitchell* v. *Commonwealth*, 33 Grat. 872; *Kunkle* v. *State*, 32 Ind. 220; *Newport* v. *State*, 140 Ind. 299; *Commonwealth* v. *Drum*, 58 Pa. St. 9; *People* v. *Schryver*, 42 N. Y. 1, 1 Am. Rep. 480.

Without undertaking to weigh the evidence, and disregarding all contradictions and explanations, we think it fully supports the verdict, and it is difficult to see how the jury could have reached any other conclusion more favorable to the appellant.

It is objected in the next place that the court erred in giving to the jury instruction numbered twenty-nine, which was in these words: "And if you, and each of you, are satisfied beyond a reasonable doubt, that the defendant did *wilfully* kill the said Ollister Wharton, but the same was done without malice express or implied, and without premeditation, voluntarily, then you may find the defendant guilty of manslaughter."

Counsel for appellant say that the use of the word *wilfully* was unauthorized and improper; that it means not only voluntarily, but with a bad purpose, or an evil intent, without justifiable excuse, citing, among other cases, *Commonwealth* v. *Kneeland*, 20 Pick. (Mass.) 206, 220, and *Felton* v. *United States*, 96 U. S. 699.

Granting that the definition contended for is the correct one, the use of the word *wilfully*, so far from being injurious to appellant, rendered the instruction more favorable to him than he had any right to ask. It said in effect: If you are satisfied beyond a reasonable doubt that the defendant *even with an evil intent, and without justifiable excuse*, did kill the said Ollister Wharton, but the same was done

without malice, express or implied, and without premeditation, voluntarily, then you may find the defendant guilty of manslaughter. The appellant could not have been prejudiced by the use of the word *wilfully*, and whatever confusion may have been occasioned by its use was more likely to operate in his favor than in the opposite direction.

The appellant requested the court to give an instruction in this form: "10. Voluntary manslaughter is the unlawful killing of a human being, without malice, express or implied, voluntarily, upon a sudden heat, as where, upon provocation, the passion has been aroused, and the fatal act is unlawfully and voluntarily committed before sufficient time has elapsed to allow the passion to cool, and for reason to resume its sway." The court refused to give the instruction, and this ruling is complained of as error.

The instruction tendered is bad, if for no other reason, because it fails to qualify the word provocation with the term adequate, or sufficient. *Murphy* v. *State*, 31 Ind. 511; *Henning* v. *State*, 106 Ind. 386, 55 Am. Rep. 756; *Stout* v. *State*, 90 Ind. 1.

Besides, instructions numbered three, twelve, thirteen, fourteen, eighteen, and twenty-nine, clearly and distinctly advised the jury upon every point intended to be covered by the instruction offered by appellant.

Appellant requested the court to instruct the jury as follows: "12. You are the *sole* and exclusive judges of the law and of the facts. It is the duty of the court to instruct the jury in the law, but his instructions are as advisory only, and you may disregard them, and determine the law for yourselves." The court refused to give this instruction, but in its stead instructed the jury that they were the exclusive judges of the law and the facts.

It has been held by this court that the jury in a criminal case are not, strictly speaking, the *sole* judges of the law. *Anderson* v. *State*, 104 Ind. 467. See, also, *Zimmerman* v. *State*, 4 Ind. App. 583.

It is said in *Dean* v. *State*, 147 Ind. 215: "It is the duty of the trial judge to instruct the jury as to the law of the case, and not by his instructions to submit to them different legal propositions and inform them that they are to determine which are applicable to the case on trial. The jury, it is true, under our Constitution, are the exclusive judges of the facts, and have also the right to determine the law, but this does not give them the right to disregard the law. Under their oaths they are required to determine the law correctly. *Anderson* v. *State, supra,* 447, 478; *Blaker* v. *State,* 130 Ind. 203; *Walker* v. *State,* 136 Ind. 663, 670, 671; *Reynolds* v. *State,* 147 Ind. 3; *Smith* v. *State,* 142 Ind. 288."

In *Blaker* v. *State, supra,* 205, this court said: "They [the jury] have no more right in determining the law to disregard and ignore the court's instructions arbitrarily and without cause than to disregard and ignore the evidence, and determine the facts arbitrarily and without cause."

The constitutional provision is as follows: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Art. 1. §19.

When the court is properly requested to instruct the jury in a criminal case that they have the right to determine the law and the facts, it is bound to do so. But it is not required to go any farther. It is not required to neutralize the effect of its instructions by telling the jury that they are at liberty to disregard them, and to decide the law for themselves. When the court informs the jury that they have the right to determine the law and the facts, it states the only legal proposition necessary to be laid down on that subject. No elaboration of it can make it any clearer, nor can the court be subjected to the indignity of being compelled to state that its carefully considered views of the law of the case possess no weight, and may be ignorantly or contemptuously set aside. The mere request for such an instruction savors of disrespect for the court; the giving of it tends to degrade the court, and

to bring it into contempt. In our opinion, there was no error in the refusal of the court to give the twelfth instruction.

In this case an article of clothing of the appellant, the knife with which the homicide was committed, and a knife found in the pocket of the deceased, were attached to the bill of exceptions. Such things have no place in the bill, and should never be brought here with it. Verbal descriptions of all items of evidence of this character are sufficient, and are the only proper methods of bringing such items to the attention of this court.

Finding no error in the record, the judgment is affirmed.