# THE STATE v. ARTHUR VOLZ, Appellant.

**Division Two, December 6, 1916.**

1. **CARNAL KNOWLEDGE: Sufficiency of Evidence: Age of Defendant.** Testimony by prosecutrix in a carnal knowledge case that defendant told her he was twenty-one years of age is sufficient proof to sustain a verdict that he was over seventeen years old.

2. ———: ———: **Proof of Forcible Ravishment.** The sexual act denounced by section 4472, Revised Statutes 1909, as amended by Laws 1913, page 218, constitutes a crime when committed under the conditions detailed in the statute, whether accomplished with or without force, or with or without the consent of the female.

3. ———: **Instruction: Fixing Defendant's Age at Sixteen Instead of Seventeen Years.** Although the Act of 1913, Laws 1913, page 218, raised the minimum age of the male from sixteen years, as it was prescribed by Sec. 4472, R. S. 1909, to seventeen years, an instruction in the prosecution of a crime committed in 1914 which authorizes the jury to convict defendant if "he was then and there a male person over the age of sixteen years," is erroneous, but it is not prejudicial error if the uncontradicted evidence fixed his age at twenty-one years and there was no actually contested issue concerning his age.

4. ———: ———: **Fixing Punishment at Less Than Statutory Maximum.** It is the court's duty to fix the amount of the punishment, and that being the case a defendant cannot complain that the instruction fixed his punishment at less than the statutory maximum; but even if the statute authorized the jury to fix the punishment, and the statute fixes the maximum punishment for the crime at five years' imprisonment, defendant is not injured by an instruction which tells the jury that the maximum punishment they can impose is two years' imprisonment.

5. ———: ———: **Guilty of Second Act.** An instruction which requires the jury to find that the prosecutrix at the time of the commission of the sexual act was of "previous chaste character" and defines previous chaste character to mean that prosecutrix "had never had sexual intercourse with any male person," does not authorize them to convict defendant of a second act, although there is clear evidence of such second act.

6. ———: ———: **Definition.** Defining "carnal knowledge" in an instruction instead of the conventional expression "carnal knowledge" cannot mislead the jury.

7. ———: ———: **Proof of Unchastity.** The court should not instruct the jury that prosecutrix's unchastity can be established by cir-

cumstantial as well as direct evidence, where there is no evidence of a circumstantial character concerning prosecutrix's conduct prior to the alleged offense sufficient to warrant an inference of unchastity.

8. ———: ———: Consent: Immaterial. An instruction which tells the jury that it was "immaterial" whether prosecutrix in a case of carnal knowledge of an unmarried female of previous chaste character, between the ages of fifteen and eighteen years, did or did not consent to the act, and that consent, if any, "is no defense in this case," is unfortunate in the use of the word "immaterial;" yet when the instruction is read as a whole, it leaves the meaning clear that the jury were merely informed that they were not to consider the matter of consent as a defense to the act.

9. ———: ———: Presumption of Chastity. The court should not instruct the jury on behalf of defendant in a carnal knowledge case that there is no presumption that prosecutrix was of chaste character prior to the date of the alleged offense.

10. ———: Improper Remarks of Counsel. A reference by counsel to the State that the defendant in a prosecution for carnal knowledge of a previously chaste female aged sixteen years in which character of cases juries are easily prejudiced, to the fact that defendant had not testified, if withdrawn and apologized for by counsel and he is pointedly rebuked by the court and the jury directed to disregard the remarks, if such remarks stood alone, might not justify a reversal; but when they are coupled up with other remarks to the effect that defendant had refused to marry prosecutrix; of which there is no evidence, and an appeal to the jurors to protect their own daughters, all of which went unrebuked, in spite of a request for a rebuke, the remarks as a whole were prejudicial.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED AND REMANDED.

*Bass & Bass* for appellant.

(1) The requested instruction of defendant in the nature of a demurrer prayed for by defendant at the close of the State's case, should have been given. Sec. 4472, R. S. 1909, as amended by Laws 1913, p. 218. (2) The instruction given by the court of its own motion is erroneous, in that it is confusing and improperly states the law and punishment thereunder. State v. Schenck, 238 Mo. 429; Sec. 4472, R. S. 1909, as amended by Laws 1913, p. 218. (3) The instruction

on circumstantial evidence prayed for by the defend-
ant should have been given. State v. Kozlickie, 241
Mo. 301. (4) The court erred in overruling defend-
ant's objection to special counsel for the State inject-
ing testimony into the case during his closing address
to the jury. (5) It was prejudicial error for the court
to refuse to rebuke special counsel for State, when he
went out of the record in his address to the jury. (6)
It is prejudicial error and a violation of the statute
on the part of special counsel for State, to refer to
the failure of the defendant to take the stand and tes-
tify. Sec. 5243, R. S. 1909. The following cases are
cited to support foregoing points in relation to the
prejudicial errors in the address to the jury by the
special counsel: State v. Horton, 247 Mo. 657; State
v. Ferguson, 152 Mo. 92; State v. Wigger, 196 Mo. 90;
State v. Leaver, 171 Mo. App. 371; State v. Upton,
130 Mo. App. 316; State v. Dietz, 235 Mo. 332; State
v. Martin, 229 Mo. 620; State v. Webb, 254 Mo. 414;
State v. Jackson, 95 Mo. 623; State v. James, 216 Mo.
394; State v. Newcomb, 220 Mo. 54.

*John T. Barker*, Attorney-General, and *S. P. Howell*,
Assistant Attorney-General, for the State.

(1) The assessment of the punishment by the jury
does not render the verdict defective for the reason
that it was adopted by the court and therefore became
its act. State v. Hainey, 168 Mo. 197; State v. Shear-
on, 183 S. W. 291; State v. Sutton, 232 Mo. 249; State
v. Reed, 237 Mo. 227. (2) The instructions are in an
approved form and fully advised the jury upon all
questions of law necessary for their guidance. State
v. Perrigan, 258 Mo. 233; State v. Salts, 263 Mo. 304;
State v. Day, 188 Mo. 359. (3) The remarks made by
special counsel for the State do not constitute rever-
sible error under the facts of this case. Sec. 5242, R.
S. 1909; State v. Degonia, 69 Mo. 485; State v. Fitz-
gerald, 130 Mo. 436; State v. Taylor, 134 Mo. 157;
State v. Kelleher, 201 Mo. 627; State v. Larkin, 250
Mo. 218.

WILLIAMS, C.—Upon an information charging him with having carnal knowledge of an unmarried female of previous chaste character, between the ages of fifteen and eighteen years, defendant was tried in the circuit court of the city of St. Louis, found guilty, and his punishment assessed at a fine of five hundred dollars and six months' imprisonment in the city jail. Defendant duly appealed. The prosecutrix on May 1, 1914, the date of the alleged offense, was sixteen years, one month and four days old, and resided, with her parents, in the city of St. Louis. About seven p. m. of that day, the defendant, a young man about twenty-one years old, living with his parents just across the street, asked the prosecutrix to take a walk with him. She had known the defendant about ten years and accepted the invitation. The two proceeded about six blocks from the prosecutrix's home out into O'Fallon Park and when they reached a dark, grassy place in the park, prosecutrix said that defendant asked to have intercourse with her and that "I refused, but I was forced to." That the defendant threw her down and had intercourse with her and said that "if anything happened to me, he would get me out of it." She testified that this was the first time that she had ever engaged in an act of sexual intercourse. The following February a girl baby was born. On cross-examination, prosecutrix admitted that a short time after this occurred she again had intercourse with the defendant, defendant telling her that if anything happened from the first act he would not get her out of it unless she again submitted to his lust. The mother of prosecutrix testified as to the age of prosecutrix and that her daughter had always been a good girl; had never worked out anywhere, but had assisted about the home, doing household duties. The mother noticed that the daughter was "getting large" and interrogated the daughter. Shortly after that the mother met the defendant on the street and told him about the situation and the defendant told her he would come over and see them, but that he would not do it while the

witness's husband was at home.  Defendant failed to come to the prosecutrix's home and the mother went to defendant's home and talked to defendant's mother about the matter.  Shortly after this, defendant, accompanied by his brother, went to the home of prosecutrix and told prosecutrix's mother that they should have an abortion performed and that he would pay for it.  He there admitted that he was the father of the unborn child.  On cross-examination the mother of prosecutrix admitted that she employed an attorney to see if arrangements could not be made for defendant to marry her daughter, but denied that she had ever attempted to accept money in lieu of a prosecution.  The mother of prosecutrix also wrote a letter to the father of defendant, informing him of the trouble.  In response to this letter the defendant and a Mr. Frank came over to the house and stated that the father of the defendant would pay for the confinement, but the mother of prosecutrix refused to accept this, stating that "it was not treating my girl just or doing anything for her baby."

Five witnesses testified that, prior to this occurrence, the reputation of prosecutrix for virtue and chastity in that community was good.

The defendant produced as a witness one Mr. Charles Hade, who testified that prior to May 1, 1914, he had had sexual intercourse with the prosecutrix fifteen or eighteen times, but he was not very definite in fixing the place and time of the different occurrences, and on cross-examination admitted that he was related by marriage to the defendant on trial.  Two other young men were placed on the stand by the defendant to testify that they each had had sexual intercourse with the prosecutrix, but they were unable to fix the date prior to May 1, 1914.  Three police officers testified that they had seen the prosecutrix out late at night on different occasions, and as late as one o'clock a. m. one morning in July, 1914, with a young boy named Uncer.  On cross-examination circumstances were brought out to show the existence of a friendly

relationship between defendant's father and these policemen.

In rebuttal the prosecutrix testified that she was not out at one a. m., in July, 1914, with the Uncer boy, and her mother testified that the prosecutrix was never out late at night unless some elderly person or her brother or sister were with her. The State then called young Uncer who denied that he was out at one o'clock a. m., with the prosecutrix in July, 1914.

The defendant did not testify in his own behalf.

I. It is contended that the evidence was insufficient to support the verdict: (1) because there was no legal proof that defendant was over seventeen years of age, and (2) because the evidence proved a case of forcible ravishment only and therefore not such a case as could come within the meaning of section 4472, Revised Statutes 1909, as amended in the Laws of 1913 at page 218.

Sufficiency of Evidence.

Each of said points must be ruled against appellant. Prosecutrix testified that defendant told her he ¯was twenty-one years old. That was sufficient evidence to justify the jury in so finding. As to the second point it is sufficient to say that the sexual act denounced by the above section of the statute constitutes a crime when committed under the conditions detailed in the statute, whether accomplished with or without force, or with or without the consent of the female. [State v. Hamey, 168 Mo. 167.]

II. The first paragraph of instruction number one is attacked. Said paragraph reads as follows:

"If in consideration of all the testimony in the case, in the light of the court's instructions, you find and believe from the evidence that at the city of St. Louis and State of Missouri, on or about the first day of May A. D. 1914 *or at any time within three years next before the filing of the information herein,* the defendant Arthur Volz was then and there a male person over the age of *sixteen* years, and that he did then and there intentionally, unlawfully

Instruction.

and feloniously have carnal knowledge of the body of one . . . and that at the time he had such carnal knowledge of the said . . . she was an unmarried female of previously chaste character between the ages of fifteen and eighteen years, you will find the defendant guilty as charged in the information and assess his punishment at imprisonment in the penitentiary for a term of *two* years, or by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the city jail not less than one month nor more than six months or by both such fine and imprisonment; and unless you so find the facts to be, you will find the defendant not guilty.''

Section 4472, supra, before being amended in 1913 (See Laws 1913, p. 218), did fix the minimum age of the male at sixteen years and the maximum punishment at two years in the penitentiary. By said amendment the minimum age of the male was changed to seventeen years and the maximum punishment was changed to five years imprisonment in the penitentiary. Said instruction was therefore erroneous in the matters above indicated, but we do not consider either of said errors to be prejudicial for the following reasons: Concerning the first point the uncontradicted evidence fixed defendant's age at twenty-one. If there had been an actually contested issue concerning defendant's age —some evidence fixing it below seventeen—then quite a different situation would be confronted and no doubt the error would be prejudicial. But under the present state of the record it clearly appears that defendant could not have been harmed by the error. Concerning the second point it is sufficient to say that it was the court's duty under said statute to fix the amount of punishment. [State v. Hamey, supra; State v. Reed, 237 Mo. 224.] But even though it had been the province of the jury to assess the punishment, it would be difficult to conceive how defendant could be injured by having the maximum punishment reduced from five to two years.

It is further contended that the evidence showed two acts of intercourse, the second act a short time after the act of May 1st, and that the instruction therefore permitted the jury to find him guilty of the second act, which according to her own testimony occurred at a time when she was unchaste. We are unable to agree with appellant's contention. The jury were not permitted by said instruction to find defendant guilty if they found that he merely had sexual intercourse with the prosecutrix, but the instruction clearly requires the jury to find that at the time of the commission of the act the prosecutrix was of *previous chaste character*. Said instruction also requires the jury to consider all the testimony in the "light of the court's instructions."

By the third paragraph of said instruction the court defined the words, "of previously chaste character" to mean that prosecutrix "had never had sexual intercourse with any male person." Whether or not this would be a proper definition of this phrase in a case where the question of reformation was involved we need not stop to discuss, but we think it clearly appears that the jury could not have been misled by the instructions in this case to believe that they could find defendant guilty of the second recent act of sexual intercourse.

In support of his contention appellant cites State v. Schenk, 238 Mo. 429, l. c. 458. We are unable to find anything stated in the opinion in the Schenk case which conflicts with our holding in the case at bar. The instruction in the Schenk case is not copied into the opinion. The opinion states that by it "the jury were instructed in effect that they might convict if they found that the defendant committed either act." The same can certainly not be said of the instruction in the case at bar; and for that reason what was said in the Schenk case cannot be accepted as an authority in point in the present case.

The term "carnal knowing" instead of the conventional expression "carnal knowledge" is also defined

in the third paragraph of said instruction. This at most was but a grammatical error and could not have misled the jury.

The court did not err in refusing to instruct the jury in effect that unchastity could be proven by circumstantial as well as direct evidence—this because there was no evidence of a circumstantial character concerning prosecutrix's conduct prior to the alleged offense sufficient to warrant an inference of unchastity upon her part.

III. The second instruction told the jury that it was "immaterial" whether the prosecutrix did or did not consent to the act and that consent, if any, "is no defense in this case." Counsel for appel-

**Consent: Immaterial.**

lant object to the use of the word "immaterial" in the instruction and in support of that contention insists that consent of the prosecutrix would be a material circumstance tending to show lack of previous chaste character. The use of the word immaterial is, in a sense, unfortunate and should be omitted from the instruction; yet, we think, the instruction, when read as a whole, leaves the meaning clear that the jury were merely informed that they were not to consider the matter of consent as a defense to the act.

IV. The court refused to give defendant's instruction to the effect that there is no pre-

**Presumption of Chastity.**

sumption that prosecutrix was of chaste character prior to the date of the alleged offense. This is assigned as error.

In the case of State v. Kelly, 245 Mo. 489, it was held to be error to instruct the jury, in a case of this character, that the law presumes that every woman is of chaste character until the contrary appears. This upon the theory, not that such a presumption did not in fact ordinarily exist, but upon the theory that the chastity of the prosecutrix was, under the statute, a fact to be both charged and proved and that such an instruction would therefore relieve the State of its

duty to "bring forward in the first instance evidence of the previously chaste character of the prosecutrix."

The instruction offered in the case at bar was correct as a purely abstract principle of law so far as it has to do with the question of the burden of proof in the case, but yet we do not think the court erred in refusing to give the same, but on the other hand think it very properly refused to so instruct; this because, (1) the jury were clearly told by other instructions that the law presumed defendant's innocence and that the burden was upon the State to prove defendant's guilt beyond a reasonable doubt and the fact of previous chaste character was specifically mentioned as one of the facts to be found by the jury before finding a verdict of guilty; (2) the giving of such an instruction on a purely technical phase of the case would have a tendency to mislead the jury into believing that there would likely be a presumption that the prosecutrix was unchaste prior to the alleged offense.

V. The most serious assignment of error has to do with the remarks made by special counsel for the State in his closing argument to the jury.

**Remarks of Counsel.**

During the closing argument special counsel for the State made the following remarks:

"It was only for the purpose of procuring a marriage between the outraged and defiled little girl and this defendant, that is what I was retained for, *and when they wouldn't do that,* I considered it my whole duty to the people of the State of Missouri and to my client to come here and prosecute this man as vigorously as the law would allow and permit me to do. I have children, I have two daughters, gentlemen of the jury, and you have daughters, among the many daughters throughout our land, and this law was passed to protect the public morals, as stated to you by the State's attorney in his opening statement and we must protect our daughters and we must protect the females of our families."

Defendant's counsel objected to these remarks and asked the court to rebuke counsel for going outside the record. The court said, "Confine yourself to the evidence," and again defendant's counsel asked the court to rebuke counsel, but the court failed to rebuke counsel saying, "I have ruled on the matter and directed counsel to confine himself to the evidence." Defendant saved an exception to the failure of the court to rebuke counsel.

A little later in the argument the following occurred: Special Counsel: "You saw the prosecuting witness on the stand. Will you believe her or will you believe Hade? Compare the two. Gentlemen of the jury, Volz [defendant] didn't go on the witness stand. The defendant didn't go on the witness stand. Think of it." The court: "One moment." Defendant's Attorney: "He knows better than that. He knows it can't be referred to and I will lay the foundation now for a new trial and except to it. That is absolutely out of order." Special Counsel: "I merely commented on it. I said he didn't go on the stand." The Court: "You ought to know and you do know, that there is a rule against referring to that fact." Special Counsel: "I will withdraw the remark." Defendant's Counsel: "He withdraws it after the injury is done and he has got it before the jury!" The Court: "Do not refer to that fact again, directly or indirectly. You are not allowed to do it, and you ought to know that and not put the State in that position." Special Counsel: "In the heat of the argument I lost control of my better judgment." The Court: "Counsel has made the statement, and it has been objected to, which he ought not to have made, and for which the court reprimands him, because if he undertakes to prosecute in this court he ought to know something about the rules and practice of the law, and you, the jury, will utterly disregard that statement and let it have no weight with you at all in deciding this case." Special Counsel: "I desire to apologize. I didn't mean to do anything improper."

There can be no question, but that the remarks were highly improper. If the reference made to the defendant's failure to take the stand was the only improper remark made we would be inclined, under the rulings in State v. Taylor, 134 Mo. 109, l. c. 158, and State v. Kelleher, 201 Mo. 614, l. c. 627, to say that the prejudice was likely cured by the severe reprimand made by the court. But the preceding remark of the special counsel in effect that defendant had refused to marry the prosecutrix, which went unrebuked by the court, was unsupported by the evidence. It would appear that counsel was in this manner trying to get before the jury facts which would not have been proper evidence had they been offered upon the stand, and which were of such a character as would inject prejudice into the case. It also appears that the counsel in further attempting to work poison into the case referred to the daughters of the jurors and appealed for a conviction, not alone upon the legitimate ground of defendant's guilt, but also upon the ground that their daughters might thereby be protected.

It is a well known fact that jurors are easily prejudiced in this character of case, and for that reason, as was well said by Brown, P. J., in the case of State v. Horton, 247 Mo. 657, l. c. 666: "Officers should conduct prosecutions of this character with scrupulous fairness and avoid injecting into the minds of the jury any matter which is not proper for their consideration, or which would add to the prejudice which the charge itself has produced in their minds."

We are of the opinion that, all the remarks considered, sufficient poison and prejudice was improperly injected to warrant a reversal of the judgment.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM:—The foregoing opinion by Williams, C., is adopted as the opinion of the court. All of the judges concur.