James Rufus PAYNE, Appellant,

v.

Elbert V. NASH, Warden, Missouri State Penitentiary, Appellee.

No. 17398.

United States Court of Appeals Eighth Circuit.

Feb. 10, 1964.

James Rufus Payne, pro se.

Thomas F. Eagleton, Atty. Gen., and Howard L. McFadden, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge:

Appellant's petition for writ of habeas corpus having been denied as to a claim of *ex post facto* application of Missouri's Habitual Criminal Act,[1] in relation to a sentence imposed for manslaughter[2] which appellant is now serving in the Missouri State Penitentiary, we granted leave to perfect appeal *in forma pauperis* to settle the record as to an issue of law that recurringly could be presented to the District Court and this Court.

There is no dispute as to the facts in this appeal. Appellant's conviction and sentence under Missouri's recidivist stat-

ute (hereinafter called "the Act") was affirmed in State of Missouri v. Payne, 342 S.W.2d 950 (Mo.Sup.1961). At the time of commission of the primary offense on June 7, 1959, Missouri's recidivist statute then required that the State adduce before the jury, as a part of its case, evidence of any prior conviction punishable as a crime by imprisonment in a penitentiary; and establish that the defendant had been *discharged* therefrom, either by pardon or compliance with the previous sentence; before that statute became applicable.[3] Hence the jury decided not only the guilt of a defendant as to the primary offense, but also whether he had been previously convicted, sentenced and discharged of a prior crime punishable by imprisonment in a penitentiary. If an affirmative answer was made as to both such issues, the jury was required to assess the maximum punishment for the second primary offense for which a defendant was found guilty.[4]

On August 29, 1959, Missouri's recidivist act was amended to provide:— That evidence of a prior conviction be heard and determined by the trial judge —out of the hearing and prior to the submission of the case to the jury on the second primary offense charge, and that he enter his findings thereon;—that the trial judge, and not the jury, assess punishment where that Act is applicable; and it was no longer necessary to assess the maximum penalty for a second offense conviction. Further, under the new Act it was not necessary to show "discharge" from a prior conviction and sentence in order to bring a defendant within the provisions thereof. Neither the old nor the new Act created an independent offense.[5] Only the punishment provided for second conviction of the primary offense was affected by both Acts.

1. § 556.280 R.S.Mo.1959, V.A.M.S. as amended August 29, 1959.

2. § 559.070 R.S.Mo.1959, V.A.M.S.

3. State v. Christup, 337 Mo. 776, 85 S.W. 2d 1024; State v. Brinkley, 354 Mo. 1051,

193 S.W.2d 49; Missouri "Habitual Criminal Act," Carson, 19 Mo.L.Rev. 309.

4. State v. Morton (Mo.Sup.1960), 338 S. W.2d 858.

5. State of Missouri v. Thompson (Mo. Sup.), 299 S.W.2d 468.

Appellant's contention as to the *ex post facto* application of the amended statute, *supra*, in relation to his sentence was ruled by the Supreme Court of Missouri, at l. c. 955 of 342 S.W.2d, as follows:

"Defendant's contention of an ex post facto application, because the crime was committed before the effective date of the (amended) Act, has been ruled in State v. Morton, Mo.Sup., 338 S.W.2d 858, 861, and State v. Griffin, Mo.Sup., 339 S.W.2d 803, 806, holding (the) amendment (in question) procedural in nature. Following these decisions, we hold that defendant has not been deprived of any constitutional right." (Par. added.)

In the light of applicable constitutional law we can only concur in the "procedural" concept given to Missouri's amended recidivist act as interpreted by the Supreme Court of that State.

The Supreme Court of the United States first had occasion to consider what constituted an *ex post facto* law in Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648 (1798). Mr. Justice Chase, there speaking for the Court, stated four distinct classes of law were embraced by that constitutional concept: "1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a *greater* punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives *less, or different, testimony,* than the law required at the time of the commission of the offense, *in order to convict* the offender." 3 Dall. at 390. (Emp. added.) However, such classification was not deemed exclusionary, and a fifth has been added, namely: Every law which, "in relation to the offence or its consequences, alters the situation of a party *to his disadvantage."* Kring v. Missouri, 107 U.S. 221, 228, 2 S.Ct. 443, 449, 27 L.Ed. 506 (1882). (Emp. added.) It is this fifth class with which we are concerned in the case at bar.[6]

In the Kring case, *supra,* the procedural matter which the Supreme Court considered to be *ex post facto* was stated thus:

"In the case before us the Constitution of Missouri so changes the rule of evidence, that what was conclusive evidence of innocence of the higher grade of murder when the crime was committed, namely, a judicial conviction for a lower grade of homicide, is not received as evidence at all, or, if received, is given no weight in behalf of the offender. It also changes the punishment, for, whereas the law as it stood when the homicide was committed was that, when convicted of murder in the second degree, he could never be tried or punished by death for murder in the first degree, the new law enacts that he may be so punished, notwithstanding the former conviction."

It was that type of change in the "law of procedure" that the Court in the Kring case held to be one of a "substantial right which the law gave the defendant at the time to which his guilt" related and that was "taken away from him by *ex post facto* legislation" under the guise of what was "called a law of procedure." That a procedural statute is not of that class

6. Manifestly, the four classes set out in Calder v. Bull, *supra,* are not applicable here. That the first three classes mentioned are inappropriate is apparent. Appellant has tried, however, to bring himself within the fourth classification. Even assuming that the amended Act constitutes a change in the "legal rules of evidence," it is not a change brought about "in order to *convict* the offender." The change herein questioned has no applicability to the principal crime for which appellant was charged. As to past offenses, proof of conviction is a condition precedent to punishment by invocation of the Habitual Criminal Act. Under the Act, as amended, the same, or lesser, punishment may be assessed.

(i. e. of the fifth category, supra) "unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offence was committed," is made manifest in Thompson v. Missouri, 171 U.S. 380, at l. c. 386, 18 S.Ct. 922, at l. c. 424, 43 L.Ed. 204. Later, in Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216, the Supreme Court again considered the type of alteration of procedural matter which transgressed the constitutional prohibition against the passage of *ex post facto* law, and ruled:

> "The distinction is one of degree * * * the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation * * * and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." At 171 of 269 U.S., at 69 of 46 S.Ct.

Thus, procedural alterations which work to the disadvantage of a defendant must be "substantial" or "material" before a court will declare them unconstitutional because of being *ex post facto*. The change must be "looked at in the light of reason and common sense" and when so considered "and applied to the present case, are to be taken as favorable rather than as unfavorable" to appellant. Rooney v. North Dakota, 196 U.S. 319, 325, 25 S.Ct. 264, 266, 49 L.Ed. 494; Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

■■ What substantial disadvantage could have inured to appellant from the procedural change of which he complains? None can be perceived. Appellant's right to trial by jury under the Missouri Constitution (Section 22(a), Art. I, Constitution of Missouri, V.A. M.S.) is the same as the right that existed at common law. At common law the jury assessed the guilt or innocence of the accused; the court fixed the punishment. State v. Morton, 338 S.W.2d 858,

861 (Mo.1960); State v. Griffin, 339 S.W.2d 803, 806 (Mo.1960). Though it is permissible for juries to assess punishment in Missouri (Ex parte Dusenberry, 97 Mo. 504, 1889, 11 S.W. 217), such was only a conditional privilege. It has long been the law of that State that no one could gain reversal of a judgment simply because a jury did not assess the punishment. See Section 546.440, R.S.Mo.1959. Under the federal law the court, and not the jury fixes the punishment. Rule 32, F.R.Cr.P.; Williams v. People of State of New York, supra. Thus, there is nothing in the Due Process clause of the Fourteenth Amendment of the United States Constitution, nor in the Constitution and laws of the State of Missouri, which gave appellant the right to have his punishment assessed by the jury.

We have no doubt that the privilege which appellant claims, i. e. "the right to have the jury and not the trial judge consider the evidence as to his previous convictions and make a finding thereon" —that the elimination of proving he was "discharged, either upon pardon or upon compliance with the sentence" are not incidents of *ex post facto* application to the primary offense for which appellant was convicted and sentenced. When it is considered that the maximum punishment which might have been meted out to appellant as a recidivist under the old Act was a mandatory maximum for the primary crime, and that under the new Act it could have been lesser, any incident of *ex post facto* application of the amended act as he here claims, has been completely destroyed. Such procedural changes in Missouri's recidivist statute making him liable for the same maximum quantity of punishment, could not possibly work to any material disadvantage to appellant. See Cooley, Constitutional Limitations, 8th Ed., Vol. 1, Chap. IX, p. 553.

The District Court's order denying appellant's application for writ of habeas corpus is

Affirmed.