STATE of Missouri, Respondent,

v.

**Wilbert HUNTER, Appellant.**

**No. 61207.**

Supreme Court of Missouri,
En Banc.

Sept. 11, 1979.
Rehearing Denied Oct. 10, 1979.

Blair K. Drazic, Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Robert L. Presson, Asst. Attys. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Charged as a second offender,[1] appellant was tried to a jury and found guilty of stealing property of a value of $50 or more, § 560.156, RSMo 1969 and § 560.161, RSMo

Cum.Supp.1975, and the court assessed punishment at five years imprisonment. On appeal, the Eastern District of the Court of Appeals affirmed in an opinion authored by Stephan, J.; and, although we agreed with the opinion as written and the result reached therein, transfer of the cause to this court was ordered for reasons which hereinafter become readily apparent.

The only contested factual issue before the jury was whether or not the property stolen had a value of less than $50 or $50 or more, *i. e.*, the distinction between a misdemeanor and a felony under those portions of the "stealing" statutes relevant to this case. Note 4 of the "Notes on Use" to MAI–CR 7.70 provided that:

If the offense is submitted as a felony for the stealing of property of the value of at least $50 and if there is any doubt that the value exceeds that amount, the stealing of property of the value of less than $50 can be submitted as a misdemeanor and as a lesser included offense.

In compliance therewith, separate instructions[2] were given with each containing the statutory range of permissible punishments. The jury obviously resolved that the property stolen had a value of at least

---

1. The Second Offender Act, § 556.280, RSMo 1969, was repealed as shown at p. 685, Laws of Mo.1977; but see § 558.016 of the new Criminal Code, which became effective January 1, 1979, reference "Extended terms for dangerous offenders."

2. *Felony*:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on January 9, 1977, in the City of St. Louis, State of Missouri, the defendant took fifteen pieces of pipe owned by J. Sheehan Plumbing Company, and

Second, that the property taken was of the combined value of at least $50, and

Third, that the property was taken by the defendant with the intent to permanently deprive J. Sheehan Plumbing Company of the use of such property and to convert it to the use of the defendant, and

Fourth, that the property was taken by the defendant without the consent of the owner, then you will find the defendant guilty of stealing property of the value of at least $50.

However, if you do not find and believe from the evidence beyond a reasonable doubt each

and all of the foregoing, you must find the defendant not guilty of that offense.

If you find the defendant guilty of stealing property of the value of at least $50, then you will fix his punishment:

1. By imprisonment by the Department of Corrections for a term fixed by you, but not less than two nor more than ten years, or

2. By confinement in the St. Louis Medium Security Institution for a term fixed by you, but not to exceed one year, or

3. By a fine fixed by you, but not more than $1,000, or

4. By both such fine and confinement in the St. Louis Medium Security Institution.

*Misdemeanor*: To avoid obvious repetition, we note only a portion of the latter, to-wit:

If you find the defendant guilty of stealing property of the value of under $50, then you will fix his punishment:

1. By confinement in the St. Louis Medium Security Institution for a term fixed by you, but not to exceed one year, or

2. By a fine fixed by you, but not more than $1,000, or

3. By both such fine and confinement in the St. Louis Medium Security Institution.

$50 and found appellant guilty of a felony for which it set punishment at confinement for one year in the St. Louis Medium Security Institution. Thereafter, the trial court, acting under the Second Offender Act, assessed the five year sentence noted—a result not unanticipated by the Committee on Criminal Pattern Instructions or this court as Note 3(d) to MAI–CR 2.04 specifically addresses a situation in which a defendant subject to the Second Offender Act may be found guilty of either a felony or misdemeanor and provides, in part, that:

> The verdict directing instructions for the state will include all ranges and types of punishment permitted as to each defendant and each offense. If the jury convicts of any felony and assesses the punishment, *its assessment will be considered as surplusage or merely advisory*, and the court will proceed to fix the punishment. If the jury convicts of the misdemeanor, its assessment of the punishment will stand.

(Emphasis added.)

■ Appellant contends that inclusion of the range of punishment in the felony instruction misled the jury to believe he would serve only the time it assessed; and, that such "deception" denied him the right to a trial by jury on the issue of guilt under the sixth and fourteenth amendments to the United States Constitution and Article I, §§ 18(a) and 22(a) of the Missouri Constitution.

The court of appeals, after first observing that the trial court had adhered strictly to the "clear" directive of Note 3(d) to MAI–CR 2.04, rejected appellant's argument by holding that:

> In this case, the jury's assessment of punishment at one year confinement was, at best, "merely advisory," and no constitutional right of defendant was violated by the fact that the trial court determined the sentence as mandated by § 556.280. The constitutional right to trial by jury in a felony case does not extend to the issue of punishment. *State v. Daugherty*, 484 S.W.2d 236 (Mo.1972); *State v. Morton*, 338 S.W.2d 858 (Mo.1960); *Payne v.*

*Nash*, 327 F.2d 197 (8th Cir. 1964). However, defendant argues further that the inclusion of the permissible range of punishment in the instruction which submitted the felony somehow misled the jury and prejudiced defendant's rights. We see no logic in this argument. On the contrary, it would seem far more likely to induce confusion in the minds of jurors to instruct them as to the permissible punishment range for the misdemeanor but fail to mention it in connection with the felony. Furthermore, the question of punishment is, under the terms of MAI–CR 7.70, addressed by the jury only after a determination of guilt is reached. We, therefore, fail to see how a jury's view of its role in deciding the former question could be said to hinder or bias its determination of the latter. See *State v. Wade*, [306 Mo. 457,] 268 S.W. 52, 56 (1924), where it was held that, because punishment under the statute in question was at the discretion of the trial court, "It made no difference what the jury was told concerning the range of punishment or what punishment it fixed in its verdict finding defendant guilty." See also *State v. Volz*, 269 Mo. 194, 190 S.W. 307 (1916).

Because the appellant, by a supplemental brief filed in this court, has focused his arguments now more on a true "concept of jury nullification," we consider the same further, even though he concedes that he has no constitutional right to have a jury assess his punishment. He claims that the jury in this case likely believed that it did not need to "stand up to the court" with a verdict contrary to the law since it could control the harshness of the sentence within the range set forth in the instruction. The extension of appellant's argument is that the jury might have acquitted him on the felony count had the members known the judge could increase the sentence.

■ Jury nullification is at best a collateral consideration in this case. It is enough to say that while courts recognize that jury nullification may occur from time to time, the practice is not encouraged in either

Missouri or federal courts. This state uses pattern instructions in criminal and civil cases. No instruction on jury nullification exists, and no case can be found in Missouri where such an instruction was sanctioned. The issue was settled by the United States Supreme Court in *Sparf and Hansen v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), which affirmed the right and duty of the judge to instruct on the law. Moreover, only two states still allow the jury to be told that it can disregard the law as given it by the court.[3] See also *United States v. Dougherty*, 154 U.S.App. D.C. 76, 473 F.2d 1113 (D.C.Cir.1972); *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969); and *United States v. Moylan*, 417 F.2d 1002 (4th Cir. 1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970).[4] Because no constitutional basis exists for nullification, none can be found in appellant's claim here that he was denied his right to trial by jury.

■ That the jury could have been misled by the felony instruction as to its power to assess punishment is difficult to deny. The harmful effect of the instruction, however, is subject to greater debate. Under the facts of this case, no prejudice to appellant is found. The question of guilt was to be determined first, under the terms of MAI–CR 7.70. Punishment was to be determined only if appellant were found guilty beyond a reasonable doubt. While it may be within reason that a jury might consider the punishment concurrently with guilt, such reasoning does not compel the conclusion that a jury would decide to convict on a felony submission, not on the basis of guilt, but on the basis that it could control the assessment of punishment. The jury in the instant case not only had the options of finding appellant guilty or not guilty of two separate crimes, it also had a variety of punishments from which to

choose. Had the jury found appellant guilty of the misdemeanor, it could have assessed a punishment identical to the one it assessed for the felony charge. However, a jury is presumed to have followed the court's instructions, *State v. Goffstein*, 342 Mo. 499, 116 S.W.2d 65 (1938), and in this case it would appear that the jury did just that. There is no reason to believe other than that the jury was convinced beyond a reasonable doubt that appellant was guilty of stealing property of a value of at least $50. This belief is bolstered by the fact that the jury had the other options which it is presumed to have eliminated in arriving at the verdict. Having reached this verdict, punishment was assessed. This court cannot find prejudice to this appellant on the basis of speculation, as appellant has urged, as to the jury's inclination toward nullification. To do so would have us believe that the jury not only ignored the instructions but focused on punishment rather than guilt.

In affirming this conviction, it is appropriate to note that an analogous sentencing procedure has been established under the new criminal code, §§ 558.016 and 558.021, RSMo 1978, and the new criminal instructions, tentatively approved by this court on January 1, 1979. See *e. g.*, MAI–CR2d 24.-02.1 Stealing: Without Consent—One Transaction. Under this new scheme, as before, the court decides the duration of the sentence. The jury's role is to set the maximum sentence within the range statutorily permitted. The only circumstances in which a judge can increase the jury's sentence are when the term fixed by the jury is less than the lowest authorized term and when the defendant is found to be a persistent or dangerous offender.

Although no prejudice to appellant occurred in this case and no prejudice is easily foreseeable from the giving of this type of

3. Maryland and Indiana. See, *e. g.*, *Wyley v. Warden, Maryland Penitentiary*, 372 F.2d 742 (4th Cir. 1967), *cert. denied*, 389 U.S. 863, 88 S.Ct. 121, 19 L.Ed.2d 131 (1967), and *Bridgewater v. State*, 153 Ind. 560, 55 N.E. 737 (1889).

4. Historically, cases of jury nullification predominantly involve issues of conscience and morality. Often noted are the acquittal of Peter Zenger of seditious libel and prosecutions under the fugitive slave law. The more recent cases involve acts stemming from protest to the war in Vietnam.

instruction in other cases, amendment of the new instructions may be in order to avoid any confusion. The sole argument, suggested by the parties to justify the current wording of instructions which tell a jury that it assesses the punishment when it doesn't, is the idea that the absence thereof would be distractive. Perhaps the jury should be informed that its role in sentencing, under some circumstances, is merely advisory. The Committee on Pattern Criminal Charges and Instructions is requested hereby to review the applicable instructions in light of the views set forth in this opinion.

The judgment is affirmed.

DONNELLY, RENDLEN and WELLIVER, JJ., and FINCH, Senior Judge, concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

HIGGINS, J., not participating because not a member of the court when cause was submitted.

BARDGETT, Judge, dissenting.

I respectfully dissent.

As pointed out in the principal opinion, the trial court instructed the jury as required by MAI–CR 2.04, Note 3(d), with reference to the assessment of punishment for the felony of stealing over $50.00. In my opinion this Court erred in causing and allowing an instruction to be given to a jury which tells the jury it "*will* fix" the defendant's punishment within certain limits, when such action by the jury is to be treated as mere surplusage if the punishment attends a jury conviction of a felony under the former second offender act.

It is clear that the jury was incorrectly instructed but that, under the instruction given, the jury justifiably believed it had the power to assess punishment whether the conviction was for stealing under $50.00 (a misdemeanor) or over $50.00 (a felony). The assessment of punishment by the jury

of one year for the offense of stealing over $50.00 was within the statutory limits and, ordinarily, the court would have no power whatever to increase such a punishment. See sections 546.410–546.450 RSMo 1969. Although the principal opinion states that the jury's assessment of punishment was, at best, merely advisory, the point is that the jury did not know that and must have believed its assessment of punishment—whether on conviction of stealing over $50.00 or under $50.00—would have the same efficacy.

So, it cannot be doubted that the jury was incorrectly instructed and, in effect, told it could do something that the law did not permit. We do not know, of course, what was said in the jury room or how they went about arriving at their verdict and punishment. Nevertheless, we know from our experience in the trial of cases as lawyers and judges that the amount of punishment a defendant may receive is often more important to the defendant and the prosecutor than the stigma attached to the conviction itself. And many convictions on pleas of guilty have been set aside for failure to fully apprise a defendant of the range of punishment.

Here the defendant testified that he did steal at least four lengths of pipe. The questions for the jury were how much did he steal and what should the punishment be. Juries have the power to compromise in arriving at a total verdict and a verdict in a criminal case is final whether or not there are compromises in the jury room. That compromise will often involve an adjustment of views on punishment when the jury is told it has a broad range within which to work.

By the verdict in this case we know the jury believed defendant should be punished by one year in jail. Would the jury have found defendant guilty of the felony had it known that the one year was merely advisory when assessed for a felony but final as the maximum that defendant could serve if assessed for the misdemeanor? Of course I do not know the answer but my opinion is that, had it known the truth, the jurors

would have adjusted their views so as to return a verdict of guilty of the misdemeanor. That is, admittedly, speculation, but no more speculation than to suppose the incorrect information in the instruction did not cause or allow a miscarriage of justice to occur.

At the behest of trial courts and the bar, this court appointed a committee of knowledgeable lawyers and judges and assigned them the task of formulating criminal instructions and notes as to their use. The court then approved them and mandated their use. We should recognize that when put into practice instructions and notes may be incorrect or bring about unjust situations, as here. When that happens, we should stand ready to correct the injustice and change the instructions and notes.

In my opinion the defendant was prejudiced because the jury was led to believe it had power to sentence for the felony. This gave the jury the impression that it had an alternative which, in law, it did not. The error can be corrected by vacating the five-year sentence and remanding the case to the circuit court for sentencing within that permitted by § 560.161(2), but not to exceed the one year set by the jury.

I would also strike Note 3(d) of MAI–CR 2.04 and require that the jury be informed of the punishments available on the felony conviction and told that the court, not the jury, would assess punishment if the conviction is for the felony.

I would, therefore, affirm the judgment of conviction but vacate the judge-imposed sentence of five years imprisonment and remand the cause to the judge for re-sentencing within the limits set by 560.161(2) RSMo Supp.1975, but not to exceed the jury assessment of one year in jail.

I therefore dissent.