**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Edgar E. SIMPSON,
Defendant–Appellant.**

**No. 11700.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 6, 1980.

Appellant's Motion for Rehearing and to Transfer Denied Dec. 2, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Loren R. Honecker, Springfield, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul M. Spinden, Asst. Atty. Gen., Jay Daugherty, Jefferson City, for plaintiff–respondent.

MAUS, Judge.

The defendant, who had been released from the penitentiary in early March, 1979,

was charged and convicted by a jury of having committed second–degree burglary on March 29, 1979. The jury assessed his punishment at 2½ years' imprisonment. However, after the defendant's motion for a new trial was overruled, the defendant was found to be a "persistent offender" under the provisions of § 558.016(2) RSMo 1979, V.A.M.S., and the court sentenced the defendant to 10 years' imprisonment.

The evidence supporting his conviction is briefly summarized as follows. About 10:00 p. m. on the night in question a railroad switchman saw two men walking along the outside of a feed mill trying the doors and windows. While the switchman was not able to see their facial characteristics, he was able to estimate their height and weight and describe the clothing they were wearing. The smaller of the two men was carrying a bar–type tool. After some railroad cars had passed, the switchman heard glass breaking and saw the larger man helping the smaller one up to a window of the feed mill. Officers were summoned and in a short time the defendant and another man were caught apparently trying to leave the area. No other persons were or had been observed in the area. The defendant was the larger of the two and when apprehended was wearing gloves which he tried to dispose of in a surreptitious manner. The two men generally corresponded with the descriptions given by the switchman. Further investigation revealed that inside the feed mill the vending machines had been forced open and the coins had been taken. There was a pile of approximately 25 pounds of dog food manufactured by the mill on the floor in the area. A pickup truck owned by the smaller of the two men was parked in the vicinity. In the rear of the truck was a sack which had contained 25 pounds of dog food manufactured by the mill. The sack then contained $70.22 in coins. Understandably the defendant does not complain about the sufficiency of the evidence to support his conviction.

■ The defendant's first point is that the trial court erred in not, upon the defendant's request, excusing a venirewoman for cause. This point is based upon the following colloquy during the voir dire examination:

Mr. Conklin: . . . is there anyone here who cannot tell the others, the other members of the jury, that they disagree with the rest of them? Is there anyone here who couldn't do that? Mrs. Tracy? [1]

Juror Tracy: If I were the only one disagreeing—

Mr. Conklin: Would you—

Juror Tracy: I'm not sure.

Mr. Conklin: You understand there is the safeguard of a unanimous verdict and that would fail if you didn't do what you felt was right. You don't think you could follow the Court's instruction?

Juror Tracy: I would try to.

This was followed by a series of questions directed to the entire panel, such as: has anyone made a commitment to themselves or with anyone so as to cause them not to be able to argue or disagree, if anyone could not "find this man innocent if you were asked to bring back a verdict right now", and the prosecutor must change that innocence to guilt and "all twelve of the jurors must unanimously do that, right?" There was no response to these questions. Counsel for the defendant did not make his request until after the voir dire had been completed and it was then overruled with the following comment by the trial court. "She impresses me favorably as a person and potential juror."

■ That decision of the trial court "is reversible only for an abuse of discretion and 'all doubts should be resolved in favor of the finding of the trial court . . . .' " *State v. Holliman*, 529 S.W.2d 932, 939 (Mo. App.1975). This principle of review is more than a legal truism. There are instances when the meaning of a response cannot be fully determined from a printed record. That meaning can be fully appreciated only

1. Concerning the propriety of this type of question, see *State v. Wolfe*, 343 S.W.2d 10 (Mo. banc 1961); Annot. Jury—Voir Dire—Hypothetical Question, 99 A.L.R.2d 7, 99 (1965).

by observing the demeanor of the speaker and appreciating the inflection and emphasis provided by the voice of the speaker. " 'A determination by the trial judge of the qualifications of a venireman necessarily involves a judgment based on an observation of the demeanor of the venireman and, in the light of that observation, an evaluation and interpretation of his answers as they relate to whether he would be fair and impartial if chosen as a juror. The trial judge is in a far better position to make that determination than are we from the cold record.' " *State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972). Further, the determination of the trial court need not be based upon any single answer, but all of a juror's responses and, in this case, failure to respond. *State v. Treadway*, 558 S.W.2d 646 (Mo. banc 1977). The trial court evaluated and interpreted the examination as establishing the venirewoman's competency as a juror and that determination was not an abuse of discretion. *State v. McMullin*, 576 S.W.2d 581 (Mo.App.1979).

■ The defendant's next point is that the trial court erred in giving Instruction No. 5 and in refusing defendants proffered Instruction No. A. Instruction No. 5 is MAI–CR2d 2.12, modified by MAI–CR2d 23.52, submitting the offense of burglary in the second degree. It concludes with paragraphs directing the jury, if the defendant is found guilty, to assess and declare his punishment and giving the range of the permissible punishments. The trial court also gave MAI–CR2d 2.60 which advised the range of the sentence the court might impose and included the following: "1. Imprisonment for a term fixed by the court, but not to exceed the term assessed and declared by the jury in its verdict . . . ." Defendant's proffered Instruction No. A was similar to Instruction No. 5, except it added a final paragraph stating, "[u]nder some circumstances the punishment you will assess is merely advisory, and the court may assess punishment." Before the adoption of The Criminal Code, the defendant's point would be applicable to second offenders only in the limited situations set forth in MAI–CR (First) 2.04, Notes on Use 3. Under The Criminal Code, the point could be applicable to all cases in which the defendant is a persistent offender or a dangerous offender. § 557.036, RSMo 1979, V.A.M.S. This is true even though a determination of whether or not the defendant is a persistent or dangerous offender is not made until after the verdict of the jury.

The defendant's point is based upon the argument that the verdict of guilty was the result of a compromise among the jurors, upon the issue of guilt, conditioned upon a reduced punishment. It is founded upon the proposition that one or more compromising jurors believed the defendant was not guilty and would have so voted had the jury been instructed as defendant requested. Or, an argument could be made that one or more jurors really believed the defendant was guilty but would not have so voted had they been instructed the punishment assessed by the jury might be merely advisory. This is sheer speculation in all cases. It is more than sheer speculation in this case where the proof of guilt is overwhelming. This court cannot find that this defendant was prejudiced by the omission of the requested clause. On that basis alone the conviction would be affirmed. *State v. Hunter*, 586 S.W.2d 345 (Mo. banc 1979).

■ Further, the effect of advising the jury that the punishment it may assess is merely advisory and that in some circumstances the court may assess punishment is likewise the subject of speculation. It could cause the jury to regard the assessment of punishment with indifference resulting in a casual assessment of the minimum punishment or on the other hand, the casual assessment of the maximum punishment. If a jury is to be advised of the power of the court in regard to persistent offenders and dangerous offenders, an instruction might well advise the jury to the effect that in all cases the court may assess a punishment by imprisonment less than that fixed by the jury or may suspend the imposition of sentence or may assess a greater punishment by imprisonment if the defendant is found

**78**

to be a persistent or dangerous offender. If the defendant's point was sound, it would call for a review of § 557.036 and MAI–CR2d Instructions. However, it is the theory of The Criminal Code that the jury will assess the punishment of persistent offenders and dangerous offenders without reference to such possibilities and the consequences thereof. Note, Sentencing Provisions in the New Missouri Criminal Code, 43 Mo.L.R. 549 (1978). It is not constitutionally mandatory that the defendant's punishment be assessed by the jury. *Payne v. Nash*, 327 F.2d 197 (8th Cir. 1964); *State v. Hunter*, supra. Without extended discussion, the defendant's point is based upon "jury nullification" which has not been accepted in Missouri. *State v. Hunter*, supra. The trial court followed the directions of § 557.036. It gave instructions in compliance with Rule 28.02 and did not err. *State v. Lenza*, 582 S.W.2d 703 (Mo.App.1979); *State v. Grady*, 577 S.W.2d 930 (Mo.App. 1979). The defendant's second point is denied and the judgment is affirmed.

BILLINGS, P. J., and HOGAN, J., concur.