STATE of Missouri, Respondent,

v.

Irving Lawrence SPENCER, Appellant.

No. 46158.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1957.

Ronald J. Fuller, Rolla, Paul Taub, Overland, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Irving Lawrence Spencer was found guilty of an assault with intent to kill or do great bodily harm by shooting James E. Blankenship with a rifle. Section 559.190 RSMo 1949, V.A.M.S. The punishment assessed by the jury was confinement in the penitentiary for a term of two years "with recommendation that he be paroled that he may continue his education." By reason of the disposition of this appeal, we need not consider the effect of this recommendation. Defendant has appealed from the ensuing

judgment, and, among other things, contends that the trial court erred in overruling his motion for judgment of acquittal. For this reason we shall make a rather detailed statement of the events.

About midnight, or shortly thereafter, on Saturday, July 14, 1956, James E. Blankenship, Charles N. Neal and Evelyn Hall drove from Rolla, Missouri, in Neal's automobile to a nearby county, gravel road near a low-water bridge so that, according to their testimony, Blankenship could show Neal where he washed his automobile. Before leaving Rolla, Neal and Blankenship had purchased a pint of rum, and after they had parked near the low-water bridge they were drinking the rum mixed with a soft drink. The defendant, then age 22 and married, was a student at the Rolla School of Mines. Blankenship and Miss Hall also were students. The defendant had seen Miss Hall getting into the automobile with Neal and Blankenship near a drug store, and he followed them to the liquor store where the rum was purchased and then followed them out of Rolla to the county road where they were parked. The reason for his interest or the occasion for his following them is not disclosed. The defendant parked his automobile, and with a flashlight and a .22 caliber rifle walked toward the Neal automobile. As he neared it he heard the three occupants singing "taps," and he heard and saw them throw some bottles out of the automobile. He then heard Miss Hall say, "Oh, I like that," and then say "no" twice. Defendant turned his flashlight on the occupants and told them to get out of the automobile, which they did. Apparently to obtain ready compliance with his instructions he fired one shot from his rifle into the brush. Defendant ordered the two men to get into the trunk of the automobile, but it was first necessary, apparently with the help of Miss Hall, to remove the spare tire and other articles to make room. After the two men were in the trunk of the automobile defendant told them that Miss Hall would not be harmed if they did as told. Miss Hall then closed the lid of the trunk as instructed by the defendant, but apparently she did not lock it, or at least it did not lock. Defendant then had Miss Hall remove her sweater and place it over her head so that she could not recognize him, and after taking her to his automobile he drove away from the area.

After defendant had driven a short distance, Miss Hall suggested to defendant that he should let Neal and Blankenship out of the trunk of their automobile because they might suffocate. Defendant agreed and indicated that it was his intention to do so anyway. He then drove back to Neal's automobile. However, in the meantime, Blankenship had opened the trunk of the automobile from the inside and got out, but Neal for some unexplained reason remained in the trunk. Blankenship obtained a .22 caliber pistol and Neal obtained a .22 caliber rifle which were in Neal's automobile. Blankenship saw the lights of an automobile approaching and he moved back into the weeds and lowered himself so that he was concealed and Neal lowered the trunk lid. The approaching automobile was that of defendant. He stopped about 20 feet from the Neal automobile and left the motor running, but turned off his lights except the parking lights. Miss Hall, who still had her sweater over her head, was told to remain in the automobile. Defendant approached the Neal automobile carrying his flashlight and rifle and said in a loud voice, "I'm going to unlock the trunk." He also stated that he did not want Neal and Blankenship to get out of the trunk for ten minutes, that they were not to notify the authorities until the next morning, and that he "still had the girl." He had inserted the key into the lock and was preparing to unlock the trunk, when Blankenship jumped toward him from the weeds at the side of the automobile with his pistol pointed at the defendant and said "No, I think we've got you." According to the defendant he turned and struck at Blankenship with the butt of his rifle and hit his arm or hand, but Blankenship testified that defendant turned and fired at him,.

and that he started firing back. Defendant's version was as follows: "I fell back on my back to the side of the road, and I was in the weeds and he was firing at me from just to the left of where I was laying. I was laying perpendicular to the road with my feet toward the road and I tried to fire my weapon, and I pulled the trigger and nothing happened, and I tried to cock it or tried to pump it and it wouldn't pump; and then I knew the safety was on; and then I fiddled with the safety; then I fired about four shots or five shots directly in front of him." As a result of this flurry of shooting Blankenship was hit in the left shoulder and defendant was hit in the right foot. When defendant heard Blankenship's pistol "click on empty" he hobbled to his automobile and drove away, but as he started his automobile Neal, who was still in the trunk of his automobile raised the lid and with his rifle shot out the right front headlight of defendant's automobile. Defendant drove to his apartment in Rolla with Miss Hall, who in the meantime was permitted to remove the sweater from around her head. Miss Hall was acquainted with the defendant, and when she removed the sweater she recognized him for the first time, and after defendant drove to his apartment she voluntarily accompanied him inside, apparently to assist him in caring for his injury. After attempting unsuccessfully to remove the bullet from his foot, defendant called a doctor and the Highway Patrol.

The above recital of the events clearly demonstrates that there is no merit to defendant's contention that the trial court should have sustained his motion for acquittal.

The defendant contends that prejudicial error resulted from the failure of the trial court to instruct on the law of self-defense. We find no material difference between the law of self-defense as applied in cases in which the defendant is charged with an aggravated assault and where he is charged with a homicide and is claiming self-defense as a complete excuse or justification.

Compare 6 C.J.S. Assault and Battery § 92, and 40 C.J.S. Homicide §§ 114 to 121. Therefore, some of the cases cited will pertain to the latter offense.

■ Although the defendant offered an instruction on self-defense, we need not determine if it correctly stated the law because even if it were not correct, self-defense is a part of the law of the case where there is evidence putting it in issue, and by reason of Section 546.070 RSMo 1949, V.A.M.S., and Supreme Court Rule 26.02, 42 V.A.M.S., the trial court was required to instruct on it in such a situation whether or not requested to do so, and even though the instruction submitted or requested by defendant was defective. State v. Ford, 344 Mo. 1219, 130 S.W.2d 635; State v. Singleton, Mo.Sup., 77 S.W.2d 80; State v. Moncado, Mo.Sup., 34 S.W.2d 59.

Defendant contends that he was entitled to an instruction on self-defense because even though he acted wrongfully when he forced the two men into the automobile trunk and required Miss Hall to accompany him, he subsequently withdrew in good faith from the difficulty, and then when the attack was made on him by Blankenship he was entitled to the right of self-defense.

■ Generally speaking, one who was the aggressor or who provoked the difficulty in which he injured or killed his assailant cannot invoke the right of self-defense to excuse or justify entirely the injury or the homicide unless he had previously withdrawn in good faith from the combat in such a manner as to have shown his adversary his intention in good faith to desist. 6 C.J.S. Assault and Battery § 92(4); 40 C.J.S. Homicide § 117; State v. Melton, 102 Mo. 683, 15 S.W. 139; State v. Moncado, supra. The rule is so well stated in 40 C.J.S. Homicide § 121, which is as applicable to the situation when the person seeking to invoke self-defense wounded his adversary as to when he killed him, that we quote therefrom. "Where one who has provoked a combat abandons or withdraws

from it in good faith, and not merely for the purpose of gaining advantage, and by his conduct clearly shows his desire to decline any further struggle, his right of self-defense is restored, and if thereafter he is pursued by his adversary, he is justified or excused in killing him if necessary to save himself from death or great bodily harm, although the whole transaction consists of but one combat or assault. In order that the right of self-defense may be restored to a person who has provoked or commenced a combat, he must attempt in good faith to withdraw from the combat. He must also in some manner make known his intention to his adversary; * * *. As long as a person keeps his gun in his hand prepared to shoot, the person opposing him is not expected or required to accept any act or statement as indicative of an intent to discontinue the assault." See also State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42; State v. Williams, 337 Mo. 884, 87 S.W. 2d 175, 100 A.L.R. 1503.

■ The undisputed facts in this case are that without any provocation defendant engaged in an altercation with Neal and Blankenship. He forced them at gun point into the trunk of their automobile, and then forced Miss Hall to accompany him. Although Neal and Blankenship were acquainted with defendant, they did not recognize him because of the darkness, and until the entire altercation was over they had every reason to believe that their assailant had the most evil motives as to them and Miss Hall. Under these circumstances, it cannot reasonably be said that when the defendant returned to the Neal automobile, carrying his loaded rifle in his hand, for the announced purpose of unlocking the trunk, that he had withdrawn in good faith from the altercation which he had provoked. He thought Neal and Blankenship were still locked in the trunk of the automobile, and he had told Miss Hall to remain in his automobile. She still had, according to his instructions, her sweater over her head to prevent her from recognizing him. In addition, when he announced to Neal and Blankenship that he was going to unlock the trunk, he told them not to get out for ten minutes, and he also announced to them that he still had Miss Hall. In view of his previous admonition that if Neal and Blankenship would do as told Miss Hall would not be harmed, this carried a particular sinister meaning. Essential parts of this entire altercation were the forcible restraint of Neal and Blankenship in the trunk of the automobile and the forcible abduction of Miss Hall. Defendant made it perfectly clear that he intended his restraint over Neal and Blankenship to continue for at least another ten minutes, and that he had no intention of then releasing his restraint over Miss Hall. Instead of any abandonment of the altercation by defendant in good faith, his conduct under the circumstances constituted a continuation thereof. Therefore, when Blankenship attempted to apprehend defendant, and Blankenship became an aggressor in the controversy, defendant did not have the right to be excused entirely for any injury he inflicted on Blankenship by reason of the doctrine of self-defense. We do not imply that defendant had to submit to any bodily injury Blankenship sought to inflict upon him, but what we say is that defendant is not entitled, as a matter of law, to be entirely excused for the result of his acts under the doctrine of self-defense. The trial court did not err in refusing or failing to give an instruction on self-defense.

Defendant makes several assignments of error pertaining to the questioning of one of defendant's witnesses and the oral argument of the prosecuting attorney.

■ Mrs. Mary M. Eppelsheimer was a character witness for the defendant and was the last witness to testify in the trial. On direct examination she testified concerning defendant's reputation. On cross-examination the prosecuting attorney asked her if she knew his reputation "where he come from." She replied, in effect, that she did to some extent, and that she was ac-

quainted with a Mr. Boenecker who served on the St. Louis Boy Scout Council and who was "intimately acquainted with Larry [defendant] and his father through the scouting movement," and that Mr. Boenecker was a friend of hers and also of the Spencers. The following then occurred:

"Mr. White: Did Mr. Boenecker tell you Larry's dad had been dis-barred from * * *.

"Mr. Taub: I object to that * * *.

"Mr. White: * * * being a lawyer?

"Mr. Taub: It's highly prejudicial and has nothing to do with these issues.

"The Court: Sustained.

"Mr. Taub: I will ask the jury be instructed to disregard this and ask that counsel be reprimanded. I think it's prejudicial and justifies the court in taking action on it.

"The Court: The jury will disregard that action.

"Mr. Taub: If the Court please, I will ask for a mistrial at this point on the grounds that the question asked by the prosecuting attorney is on matters totally extraneous to the elements and highly prejudicial to the jury.

"The Court: That will be denied. But, don't ask questions that are not pertinent to the issues here.

"Mr. White: That is all."

■ The question was highly improper, and it is impossible to conceive how any experienced prosecuting attorney could have asked the question without the studied purpose of knowingly injecting into the trial improper issues prejudicial to the defendant. We do not view this matter as though the prosecuting attorney erroneously but in good faith attempted to ask an improper question. The Attorney General does not attempt to defend the action of the prosecuting attorney, but takes the position that "the court did everything he could do short of declaring a mistrial—a drastic remedy, to be employed only in extreme situations, and one resting largely within the discretion of the court." He also points out that the question was not answered. We think the trial court could and should have done more than it did, and that would have been to grant the request of defense counsel for a reprimand. The damage was done by asking the question, and the prejudicial effect could not be removed by the casual remark that the prosecuting attorney should not ask questions which are not pertinent to the issues. See State v. Davis, Mo.Sup., 217 S.W. 87, for a comparable situation but pertaining to oral argument. It is true that whether improper remarks or questions of counsel are so prejudicial to require a reprimand of counsel or the discharge of the jury is largely within the trial court's discretion. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582; State v. Whipkey, 361 Mo. 1008, 238 S.W.2d 374, but we cannot escape the conclusion that it was obvious that the question was known by the prosecuting attorney to be improper, and that it was asked not only with the full knowledge that an objection would and should be sustained, but that once asked, whether or not answered, the prejudicial effect would be implanted in the minds of the jury. Under such circumstances, a reprimand was not only proper, but it was necessary, when requested.

■ In the oral argument to the jury the following occurred:

"Mr. White: He's a smart intelligent young man, Irving Lawrence Spencer, the Third, from a prominent family. Now, is it possible, I ask you, is it possible for a prominent young man to commit a crime the same as some poor wretched fellow * * *.

"Mr. Fuller: Just a minute. We object to that prejudicial argument on the part of the defendant.

**446**

"The Court: Overruled.

"Mr. Taub: On the part of the plaintiff.

"Mr. White: Now, you gentlemen of the jury have read our newspapers * * *.

"Mr. Fuller: We object to that argument about newspapers. No evidence of newspapers in this case at all; what they said or didn't say about the case.

"The Court: Overruled."

It is contended by the state that this argument could have been retaliatory, and that when the argument of defense counsel is not set out it cannot be determined that the remarks were improper. State v. Hannon, Mo.Sup., 204 S.W.2d 915, and State v. Demaggio, Mo.Sup., 152 S.W.2d 71, are cited. In these two cases the argument affirmatively showed that the statements were in reply to statements of the defense counsel. Here this is not true.

Defendant had placed his character in issue and we may assume that the evidence established that he came from a "prominent family." However, the reference by the prosecuting attorney in this case was not an effort to attack the credibility of defendant or to uphold the credibility of a witness for the state. See State v. Armstead, Mo.Sup., 283 S.W.2d 577. Instead, it constituted an appeal to the jury to convict the defendant because he was a "prominent young man" from a "prominent family," regardless of whether the evidence showed that he was guilty of the crime charged.

■ It is improper to appeal to the prejudices of the jury for a conviction, 23 C.J.S. Criminal Law § 1105, and accordingly it has been stated that it is improper to appeal to the jury to convict because the accused has a bad reputation. State v. Mitchell, Mo.Sup., 86 S.W.2d 185. We would have no hesitancy in saying that it would be improper to argue that an accused should be convicted because he is "some poor wretched fellow," and we see no difference in result in the appeal made in this case that the defendant should be convicted

because he is a "prominent young man" from a "prominent family."

In connection with the argument that "you gentlemen of the jury have read our newspapers," the Attorney General points out that the prosecuting attorney did not continue that argument or elaborate further even though the objection thereto was overruled. Perhaps what was said was all the prosecuting attorney intended to say, and there cannot be the slightest doubt but that the jury understood that he had reference to newspaper reports concerning the occurrence giving rise to the charge against the defendant. The statement that was made, together with the ruling of the trial court on the objection, without any more being said, may have imparted the idea to the jurors that they were entitled to take into consideration what they had read about the case in the newspapers. It was error to overrule the objection, but under the circumstances we do not need to determine if this occurrence standing alone would have been prejudicial.

■ Defendant next complains of the following comment by the prosecuting attorney in oral argument.

"Mr. White: A man of prominence and caliber of this young man, if he was struck a light blow, what's he going to think: He's going to think, 'I can employ a good attorney, someone who can make a fine argument and make a cross-examination and browbeat the witnesses—.'

"Mr. Fuller: Just a minute. We object to that; there's no evidence of browbeating any witnesses, Your Honor.

"Mr. White: It's for the jury to decide.

"Mr. Fuller: Just a minute; I objected.

"The Court: Overruled."

■ We have carefully read the entire testimony, and we find absolutely nothing to indicate any improper conduct on the part of defendant's counsel toward any witness. Not once did the prosecuting attorney

interpose an objection on this or any related ground. Nothing in the record even remotely indicates that defendant's counsel "browbeat the witnesses" or in any way conducted himself improperly. The prosecuting attorney may properly argue to the jury that it should impose more than the minimum punishment authorized by law in the event the defendant is found guilty, State v. Rhoden, Mo.Sup., 243 S.W.2d 75; State v. Carter, 345 Mo. 74, 131 S.W.2d 546; Annotation, 120 A.L.R. 502, but this is not what the prosecuting attorney did in this case. The remark of the prosecuting attorney, coupled with the ruling of the court, clearly conveyed the idea that defendant's counsel had acted improperly during the trial, and it tended to degrade the defense. The comment was highly improper, and it was error to overrule the objection.

In State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, 526, this court clearly outlined the duties of the prosecuting attorney in representing the state in the trial of criminal cases. Of course, vigorous prosecution is proper and commendable when justified by the facts, but there are rules regulating the conduct of criminal trials with which all must abide. As stated in State v. Tiedt, supra, "It is a fundamental concept of the criminal law that an accused, whether guilty or innocent, is entitled to a fair trial, and so it is the duty of the trial court, and of prosecuting counsel as well, to see that he gets one, and there must be no conduct by argument, or otherwise, the effect of which is to inflame the prejudices or excite the passions of the jury against him." Also, in that case, quoting with approval from State v. Horton, 247 Mo. 657, 153 S.W. 1051, 1054, it is stated that "Prosecuting 'officers should * * * avoid injecting into the minds of the jury any matter which is not proper for their consideration, or which would add to the prejudice which the charge itself has produced in their minds.'"

Defendant has made other assignments of error, some apparently not entirely without merit, but in view of the conclusion we have reached we need not discuss them. By reason of the above matters the judgment must be and is reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.