**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Richard BECK, Defendant-Appellant.**

**No. 47316.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 29, 1984.

Richard H. Sindel, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his jury conviction of receiving stolen property and resultant sentence of ten years imprisonment imposed by the court. On appeal he raises five contentions of error. We need discuss only two.

The evidence was sufficient to establish either directly or inferentially that defendant received from William Dauber a jade water buffalo stolen by Dauber in a robbery of a lady residing in Chicago. The buffalo had a value in excess of $150. Numerous other artifacts were stolen at the same time and there was evidence that defendant prepared a list of those items which he furnished to another person for use by that person in attempting sale of those items. There was also evidence that defendant knew the items were stolen. Defendant introduced evidence to controvert his knowledge that the jade buffalo or the other items on the list were stolen. Defendant does not challenge the sufficiency of the evidence to support the verdict.

■ Preliminarily we address the State's motion to dismiss the appeal. That motion is based upon a memorandum executed by defendant in which he waived his right to appeal "with the understanding that his sentence is to be concurrent with a federal

sentence for bank larceny in cause #74-1704 reported at 511 F.2d 997 and credit for time he has and will serve on said offense." The memorandum then stated, "It is & would not be defendant's wish to waive his right to appeal if it is determined that said conditions cannot be met or honored by rule of law or otherwise." The memorandum was also signed by his attorney and the prosecutor. The sentence imposed by the court granted defendant "credit for all time served and to be served on said Federal sentence . . ." Subsequently the Department of Corrections of Missouri determined that defendant could not be credited with that portion of the Federal sentence served prior to the date of the offense for which defendant was convicted under Missouri law. This determination was upheld by the Attorney General. Defendant then sought and was granted leave by this court to appeal out of time pursuant to Rule 30.03.

We find no merit to the State's motion. Defendant's waiver of appeal was based upon a condition which the State determined could not as a matter of law be met. When the condition failed, the waiver based on it had no further viability.

Defendant's first point involves a challenge to the cross-examination of his witnesses by the prosecutor. The first of these, Richard Knade from the Chicago area, testified on direct examination that Dauber, a resident of the Chicago area, was in the antique reproduction business and that Knade advised Dauber concerning the authenticity and value of antiques. Knade also testified that when Dauber was killed in Chicago the event generated considerable publicity in that area. On cross-examination the prosecutor asked a series of questions designed to show that Dauber was using his business as a front for stolen property, was an enforcer for organized crime in Chicago, dealt in stolen property, had been convicted of mail fraud, burglary and possession of burglary tools, had been investigated for a month by the Chicago Crime Commission, and was "the master mind of the Chicago Mob's chop shop racket." The witness was also asked about his familiarity with a group of six men and about thirty businesses contained on a list in the prosecutor's hands which is not further identified in the record and which was neither marked nor offered in evidence. The witness denied knowledge of some of the requested information and admitted having heard about Dauber's involvement in some of the activities.

The next defense witness was a Susan Caulfield whose testimony on direct established continuing attempts by the State's primary witness, Andrew Filimowicz, to sell stolen property. Filimowicz had testified that he was introduced to Beck by Bill Hoffman because Hoffman was receiving considerable attention from the police and did not want to attempt to sell stolen property for Beck. Filimowicz admitted his involvement with Beck in attempting to sell stolen property. He testified pursuant to an arrangement with the State. On cross-examination of Ms. Caulfield the prosecutor elicited that Hoffman was her employee and implied a more intimate relationship. He then questioned Ms. Caulfield on her knowledge of Hoffman's involvement with stolen property, and an arrest and charge of receiving stolen property.

The next witness was Robert Bonner from Chicago, a former employee of Dauber. The thrust of his testimony was that Dauber was seeking to have Beck represent him in St. Louis and Kentucky in Dauber's antique business. On cross-examination the prosecutor questioned Bonner on his awareness of Dauber's involvement in stolen property in Chicago, Dauber's involvement in a "chop shop" operation there, Dauber's conviction for mail fraud, Dauber's position as a mob enforcer involved in numerous murders in Chicago, Dauber's investigation by the Chicago Crime Commission, Dauber's arrest for cocaine possession, Dauber's possession of numerous guns, and Dauber's involvement with some of the people and all the businesses set forth in the cross-examination of Knade. The witness denied knowledge of some of the information and admitted having heard about some.

The final defense witness was Leo Bartolotta. His testimony on direct was to refute Filimowicz's testimony that he returned the water buffalo to Beck after an unsuccessful attempt to sell it. On cross-examination the witness was asked if his brother was involved with stolen property. Objection was sustained. Immediately thereafter the witness was asked if his brother had a "case pending." Over an objection which was overruled the witness stated he did not know.

It must be conceded that many of the questions complained of on appeal were not objected to at trial, that some of the objections were devoid of grounds, and that the answers in many cases were that the witness was unaware of the fact posited. But many of the questions were objected to. It has also been held in this State that when the evidence is incompetent for any purpose a general objection is sufficient. *State v. Leonard,* 182 S.W.2d 548 (Mo. 1944) [4]. The courts additionally have recognized that some questions are so improper that the mere asking of the question prejudices the defendant regardless of the answer. *State v. Spencer,* 307 S.W.2d 440 (Mo.1957) [6]; *State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979) [3, 4]. The manner of phrasing of the questions, the specificity of them, and the persistence of inquiry even after the witness' denial of knowledge bring the questioning within the doctrine of the *Spencer* and *Dunn* cases. We need not state the rules concerning inflammatory and prejudicial questioning and argument on extraneous or collateral matters. That has been done in depth in *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (banc 1947); *Bellovich v. Griese,* 100 S.W.2d 261 (Mo.1936); *State v. Leonard, supra; State v. Spencer, supra; State v. Selle,* 367 S.W.2d 522 (Mo.1963); *State v. Thomas,* 535 S.W.2d 138 (Mo.App.1976); *State v. Siems,* 535 S.W.2d 261 (Mo.App.1976). We need only say that the questioning here is fully comparable to that found prejudicially

erroneous in those cases. The constancy and intensity of the questioning that occurred here combined with the failure of the trial court to sustain the objections that were made, thereby lending authority to the propriety of the subject matter, is adequate answer to the State's argument that the matter was not properly preserved.

■ The State contends the questions were permissible because the character of Dauber was in issue. Not exactly. Evidence that defendant knew that Dauber was engaged in stealing would be admissible as a circumstance to show defendant's knowledge that the items received from him were obtained illegally. But the knowledge of Knade and Bonner of Dauber's reputation in Chicago [1] does not tend to prove anything about defendant's knowledge of Dauber's activities when he met him in St. Louis. The evidence could have no purpose other than to attempt to convince the jury of defendant's guilt because of his association with Dauber. The same is true of the cross-examination of witnesses Caulfield and Bartolotta as relates to Hoffman and Bartolotta's brother. We are unable to find any basis upon which this questioning is justified and it was clearly prejudicial. For that reason the case must be reversed and remanded.

■ We deal with a second contention of defendant which may arise on retrial. Defendant attempted to elicit testimony from Bonner that Dauber stated to Beck that the property provided by Dauber to Beck for sale came from an estate sale in Chicago. The trial court refused to allow the testimony on the basis that it was hearsay. It was not. The testimony was not offered for the truth of Dauber's statement but to show the knowledge or belief of defendant in accepting the items for sale. *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95 (Mo.1963) [6, 7]; *Replogle v. Replogle,* 350 S.W.2d 735 (Mo.1961) [2];

1. While the record is not completely clear it appears that their information concerning his most serious conduct arose from publicity following his death. Obviously, such public disclosures after his death of Dauber's alleged criminal activities cannot retroactively confer knowledge during his life.

*State v. Gardner*, 558 S.W.2d 395 (Mo.App. 1977) [4, 5]. In contrast the trial court correctly sustained the State's objections to testimony that defendant stated that the property came from an estate sale. Those statements could only be offered as representations of what defendant believed and therefore for their truth. They were statements favorable or consistent with defendant's position at trial and therefore were not admissions. *Albertson v. Wabash R. Co.*, 363 Mo. 696, 253 S.W.2d 184 (1952) [6, 7]. They were, in the shorthand utilized by trial lawyers to describe this situation, self-serving.

We have examined defendant's remaining points and find them without merit.

Judgment reversed and cause remanded for new trial.

GAERTNER, P.J., and STEPHAN, J., concur.