**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Mary B. BURKE, Defendant–Appellant.**

**No. 56465.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 16, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1990.

Case Transferred to Supreme Court Dec. 18, 1990.

Case Retransferred to Court of Appeals June 11, 1991.

Original Opinion Reinstated June 20, 1991.

Edward C. Cody, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant was convicted by a jury of involuntary manslaughter, § 565.024.1 [1], and was sentenced to six months imprisonment. She appeals. We affirm.

Defendant does not challenge the sufficiency of the evidence. Defendant was the baby-sitter of the victim, Jessica Lange, a ten-month-old infant, in good health until December 7, 1987. On that day, paramedics responded to a call at defendant's house that a child was not breathing. The paramedics transported the infant to the hospital. The infant died the next day.

Dr. Mary Case, who performed the autopsy on the infant, testified that, in her opinion, the infant died as a result of injuries sustained when she was shaken. Dr. Case also testified that, in her opinion, the infant would have lost consciousness immediately at the time she was shaken. The evidence showed that nobody other than defendant and other children she was baby-sitting had been present at her house on December 7.

On the first day of trial, pursuant to § 557.036, defendant requested the trial court to assess punishment, should the jury return a verdict of guilty. In a pretrial conference, the trial court said it would "defer" its ruling on defendant's request and "caution[ed]" counsel they were free to qualify the jury on the issue of punishment. At the instruction conference after the close of the case, the court "conditionally" granted defendant's request, but said it was going to seek an advisory verdict from the jury on the issue of punishment. Defendant objected, arguing that § 557.036 prohibited the court from seeking an advisory verdict on the assessment of punishment. Nonetheless, the court sought the advisory verdict.

Following the instructions, the jury "assessed" punishment at six months imprisonment. In sentencing defendant to this six months imprisonment, the court noted it "would have had to consider imposition of a more severe punishment up to seven years."

■ On appeal, defendant argues these actions by the trial court violated § 557.036. This statute provides that "[t]he court shall instruct the jury as to the range of punishment ..., unless"

(1) The defendant requests in writing, prior to voir dire, that the court assess the punishment in case of a finding of guilt, or

(2) The state pleads and proves the defendant is a prior offender, persistent offender, or dangerous offender, as defined in section 558.016, RSMo.

. . . . .

5. The court shall not seek an advisory verdict from the jury in cases of prior offenders, persistent offenders, or dangerous offenders; if an advisory verdict is rendered, the court shall not deem it advisory, but shall consider it as mere surplusage.

In the present case, "prior to voir dire", defendant did make a written request that the court assess punishment. Nothing in the statute allowed the trial court to defer its decision on this request once it was made. Moreover, defendant contends, there is no provision in § 557.036.2 for the court to "conditionally" grant defendant's motion but still seek an "advisory opinion" on punishment from the jury. "This [action]", defendant argues, "was unfair and violative of both the spirit and letter of § 557.036.2."

We find the trial court did commit error, but we also find the error was not prejudicial.

§ 557.036.2(1) requires the written request in issue here to be made "prior to

1. All statutory references are to RSMo 1986 unless otherwise noted.

voir dire." Defendant complied with this provision. The statute does not expressly or by implication give the court the discretion to either grant or deny this request, and there is no reason for the court to delay ruling on the request. The failure to grant the request when it was made was error.

This error was compounded by the trial court. As noted, § 557.036.2(1) directs the trial court to "instruct the jury as to the range of punishment ..., unless [t]he defendant requests in writing, prior to voir dire, that the court assess the punishment...." Sensibly read, this is an express prohibition against the court instructing the jury on the range of punishment when the defendant requests the court to assess punishment in compliance with the statute. This express prohibition has been part of this statute since the statute was enacted as part of our Criminal Code in 1977, effective on January 1, 1979. *See* § 557.036 RSMo 1978.

This statutory prohibition is reflected in our form criminal instructions. MAI–CR 3d 304.08 is the form instruction for "Modifications When The Jury Is Not To Assess Punishment". This form instruction makes no provision for submitting the issue of punishment to the jury in any manner. Moreover, the Notes on Use require that "MAI–CR 3d 304.08 *must be used* when the Court and not the jury assesses and declares the punishment. The only difference between the verdict director here and the usual one is that the range of punishment is not submitted to the jury with this instruction." Note 2 (Emphasis added). Furthermore, the "usual instances in which this instruction will be applicable are ...

. . . . .

(F) When the defendant, in writing and prior to voir dire, has requested the Court to assess the punishment in case of a finding of guilt as provided in Section 557.036.2(1), RSMo 1986." *Id.*

In the present case, the court did not modify the verdict directing instruction to comply with these Notes on Use but, instead, submitted the issue of punishment to the jury just as if defendant failed to make a written request for the court not to do so. Thus, this action of the court also was error.

■ The issue here, however, is whether these errors were prejudicial. Under present Missouri law, we are constrained to find no prejudice occurred.

One obvious purpose of § 557.036 is to allow a defendant to take the question of punishment away from the jury. A defendant may wish to do this in order to avoid a compromise verdict: the jurors compromising their views on the guilt of defendant and, then, finding guilt but assessing what they believe to be a short sentence as punishment.

Here, the State's case depended upon circumstantial evidence and expert testimony which was contradicted by expert testimony offered by defendant. Although defendant did not give a reason for her request to the trial court to assess punishment, and none was needed, presumably the reason was to avoid a compromise verdict on this evidence. Defendant did make this argument before us in oral argument.

Defendant's argument is answered and disposed of by the presumption that the jury followed the court's instructions. *See, e.g. State v. Hunter*, 586 S.W.2d 345, 348 (Mo.1979). In the verdict directing instruction, the jury was instructed to address and resolve the issue of guilt, and, if it did find defendant guilty, it was, then, instructed to assess punishment within the ranges given. (See Appendix). Presuming the jury followed this instruction compels the conclusion that the jury decided guilt before punishment, and, therefore, the jury's ostensible control over punishment did not cause it to compromise its decision on guilt. *Id.* In short, if the instruction on assessment of punishment did mislead the jury, it did not mislead the jury to prejudice.

The use of this presumption to resolve this issue of possible prejudice in this manner is neither novel nor unique. *See, State v. Hunter, supra* and *State v. Wood*, 662 S.W.2d 876 (Mo.App.1983).

In *Hunter*, the defendant, a second offender, was charged with stealing property

of a value of $50 or more. The only contested factual issue was whether the value of the property was more or less than $50. *Id.* at 346. In compliance with the then existing form instructions, separate instructions were given on the felony of stealing property valued over $50 and the misdemeanor of stealing property valued less than $50. Each instruction contained the statutory range of permissible punishment. The jury found the defendant guilty of the felony, stealing property valued over $50, and assessed punishment at one year imprisonment. However, acting under the then existing Second Offender Act and in compliance with the then existing MAI–CR 2.04, the trial court treated the jury's assessment of punishment "as surplusage or merely advisory" and imposed a sentence of five years. *Id.* 347.

On appeal, the defendant argued the instructions "misled the jury to believe he would serve only the time it assessed." *Id.* at 347. Acknowledging "the jury could have been misled by the felony instruction as to its power to assess punishment", the Court, nonetheless, found the instruction worked no prejudice because "a jury is presumed to have followed the court's instructions." *Id.* at 348.

"The question of guilt was to be determined first, under the terms of MAI–CR 7.70. [The applicable verdict directing instruction]. Punishment was to be determined only if appellant were found guilty beyond a reasonable doubt. While it may be within reason that a jury might consider the punishment concurrently with guilt, such reasoning does not compel the conclusion that a jury would decide to convict on a felony submission, not on the basis of guilt, but on the basis that it could control the assessment of punishment.... This court cannot find prejudice to this appellant on the basis of speculation, as appellant has urged, as to the jury's inclination toward nullification. To do so would have us believe that the jury not only ignored the instructions but focused on punishment rather than guilt." *Id.*

To be sure, the felony of stealing and the misdemeanor of stealing were both submitted to the jury, and, thus, the court said, "[h]ad the jury found appellant guilty of the misdemeanor, it could have assessed punishment identical to the one it assessed for the felony charge." *Id.* This option, the Court reasoned, "bolstered" its belief that the jury followed the instructions and determined guilt before punishment.

Regardless of the "bolstering" facts of *Hunter,* the Court's conclusion that no prejudice was worked is compelled by the presumption that the jury followed the instructions and, therefore, did not consider punishment along with or prior to guilt. Whether the presumption is based upon the Court's understanding of common knowledge and logic or merely reflects an indulged in legal fiction, the Court chose it to resolve the possible existence of prejudice resulting from the perceived probability of a jury being misled by instructions.

Our colleagues in the Western District understood this to be the touchstone of *Hunter.* In *State v. Wood,* 662 S.W.2d 876 (Mo.App.1983), the defendant was charged as a prior offender. At the time of the trial in *Wood,* § 557.036 was in conflict with applicable instructions requiring courts to instruct juries on punishment in all class C or D felonies. The trial court followed the instructions and gave an instruction in violation of § 557.036. After a verdict of guilty, the trial court sentenced the defendant to five years despite the fact that the jury's verdict assessed punishment as two years.

On appeal, the Western District held the submission of punishment to the jury violated the statute and was, therefore, erroneous. *Id.* at 878. However, the Western District followed *Hunter* and found the error was not prejudicial. *Id.*

The Western District followed *Hunter* with "reluctance" *Id.*, noting that "[w]hether the jury would have returned a different verdict if given correct information as to imposition of sentence is no more" speculative, the Court said, than "the assumption that the erroneous instruction on punishment had no effect on the jury." *Id.* "Regardless of these reservations," the court

said, it believed it was bound by the reasoning of our Supreme Court in *Hunter*, and found the instructional error was not prejudicial because "the jury first considers the issue of guilt before turning to the matter of punishment and therefore misdirection as to punishment affects the jury only after a decision to convict has been reached." *Id.*

Our understanding of *Hunter* and its effect is no different than the Western District's. We also have reservations about the rationale underpinning *Hunter*.

■ The presumption that a jury follows the instructions exactly is simply that—a legal presumption, not an inference based upon established fact. The presumption is a legal fiction, created to protect the integrity of the trial process. But, this presumption, like other legal fictions, can only be indulged in when its use squares with logic, is for a rational purpose and supports a sensible conclusion. Its use here does not meet any of these criteria.

Here, as noted, one obvious purpose of the statute in issue, § 557.036, is to allow a defendant to take the question of punishment away from the jury, in order to avoid a compromise verdict. This purpose is obviated, however, if the jury is, nonetheless, instructed on punishment as well as guilt and then presumed to have considered the issue of guilt, alone and prior to the consideration of punishment. This effectively destroys the *purpose of the statute*. Thus, rather than protecting the integrity of the trial process, the use of the presumption here compromises the integrity of the very trial process used.

However, neither logic nor life has so changed since *Hunter* that its controlling effect be changed here by us. Absent further direction from our Supreme Court, we are constrained to follow *Hunter* and find the instruction in issue was not prejudicial.

Defendant also contends the trial court erred in sustaining the state's objections to questions defendant describes on appeal as regarding her credibility, character, and reputation. Defendant cites a number of instances where the trial court sustained an objection by the state. However, in each instance defendant has cited in her brief, either no offer of proof was made showing what the evidence would be, or the question asked sought the opinion of the witness, not the witness' knowledge of defendant's reputation.

■ To preserve for review the trial court's sustention of the state objections to defendant's questions, defendant was required to make an offer of proof showing what evidence these questions would have elicited. *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987) *cert. denied* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Defendant made an offer of proof for only one of the questions she cites on appeal. Thus, the others are not preserved for appeal. *Id.*

■ The question for which defendant did make an offer of proof was: "Drawing on your background in psychology and your experience and opportunity to observe [defendant], how would you classify her as a parent, as a caretaker of small children?" In the offer of proof, defense counsel said: "I ask the Court to accept an offer of proof that this witness, if allowed to testify, based on her background and experience and psychology background and opportunity to observe the defendant would testify that *in her opinion* [defendant] has a good character traits [sic] for acting as a care giver of small infant children." (Emphasis added)

It is obvious from defense counsel's offer of proof that he was seeking the witness' own opinion about defendant's character, not other persons' opinions.

It is not what the witness knows about the general conduct of the person about whom he testifies, but rather he should know the general reputation of this person in the neighborhood or among people with whom the witness associates for the character trait in question. A personal view of the witness as to the character of the accused is immaterial and not admissible.

*State v. Huffman*, 607 S.W.2d 702, 704

(Mo.App.1980).[2]

Next, defendant argues the trial court erred in allowing a police officer to testify after he admitted he destroyed his notes from his investigation. Officer Leonard Reinhardt investigated the death of victim. During the course of his investigation the Officer took notes from which he compiled his report. He then destroyed the notes.

■■■ Defendant argues the notes contained exculpatory evidence and also argues it violates fundamental fairness to allow Officer Reinhardt to testify when this evidence is not available to defendant. Defendant's argument is defective for two reasons.

First, defendant did not object to Officer Reinhardt testifying at trial. During a pretrial hearing on another matter, Officer Reinhardt testified he destroyed his notes. Thus there can be no question defendant was aware of this ground for objection. Where testimony is admitted without objection, defendant may not complain of that admission on appeal. *State v. Graves*, 588 S.W.2d 495, 499 (Mo. banc 1979).

Second, the alleged exculpatory evidence was in fact shown. This evidence consisted of statements made to the Officer by parents of other children for whom defendant was a baby-sitter. The parents had told the Officer they were pleased with defendant as a baby-sitter. In cross-examining the Officer, defendant was allowed to ask the Officer what the parents of defendant's other charges thought of her as a baby-sitter. Initially, the state objected to the questions as seeking hearsay evidence. Later, the state withdrew the objection, and defendant was allowed to elicit this information from the Officer. Since the alleged exculpatory evidence was before the jury through some other means, the state's failure to produce the evidence did not cause fundamental unfairness. *State v. Chaney*, 663 S.W.2d 279, 285 (Mo.App. 1983).

■ Defendant also contends the verdict directing instruction, Instruction 5, was prejudicially erroneous. First, she argues "defendant was not found guilty of the charge in the indictment" because one element of the charge was missing from the instruction.

The indictment charged that defendant committed involuntary manslaughter by "recklessly [causing] the death of Jessica Lange by shaking her body and causing trauma to victim's brain." The verdict directing instruction, however, only required the jury to find that defendant caused the death of Jessica Lange by shaking her and, in doing so, defendant acted recklessly. Defendant argues the instruction should have included the indictment language that defendant caused "trauma to the victim's brain." We disagree.

The indictment in the present case was patterned after MACH—CR 13.10. The form for this charge reads in pertinent part: "defendant recklessly caused the death of [*name of victim*] by (shooting) (stabbing) (striking) ([*concise statement of other means used to cause death*]) him." This form reflects the essential elements of the crime with which defendant was charged. § 565.024.1.[3] Here, the "means used to cause death" was shaking the victim. The additional language in the indictment about "causing trauma to the victim's brain" simply describes the effect of the shaking. This language does not define an element of the crime charged.

The verdict directing instruction in question covered all essential elements of the crime charged and required the jury to find each of the elements. The instruction, therefore, was proper. *State v. Shirley*, 657 S.W.2d 686, 688 (Mo.App.1983).

■ Defendant next challenges Instruction 5 because it failed to define "recklessly" or "consciously disregards." Defendant's argument concerns the following portion of the instruction:

---

**2.** Defendant does not argue the witness was qualified to give an expert opinion about defendant's character. We express no opinion on this issue.

**3.** Section 565.024.1 reads, in pertinent part, "[a] person commits the crime of involuntary manslaughter if he . . . recklessly causes the death of another person."

In determining whether the defendant recklessly caused the death of Jessica Lange, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk she will cause death and she consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

During deliberation, the jury sent a note saying, "Can we have more clarification or instruction on second portion of the charge—terminology recklessly caused consciously disregards." The court responded by a written statement that it "cannot answer [the] question. You will be guided by the instructions given to you."

Defendant did not raise this definitional issue in her "Point Relied On." This failure violates Rule 84.04(d), and, thus, the issue has not been preserved for appeal. *State v. Martin*, 616 S.W.2d 80, 81 (Mo. App.1981). We review, however, for plain error.

MAI–CR 3d 333.00 governs the giving of definitions. Notes on Use 2 to this form instruction describes the circumstances when a definition may or must be given. A definition may not be given unless the Notes on Use for the instruction require or permit a definition to be given. The Notes on Use for MAI–CR 3d 313.10, the form verdict directing instruction here, do not allow for the definition of "consciously disregards."

Although there is still disagreement about whether a district court of appeals has the authority to determine the propriety of a form MAI, *see State v. Franklin*, 752 S.W.2d 937, 942 (Mo.App.1988) (Grimm, J. concurring); *State v. Singer*, 719 S.W.2d 818, 823 (Mo.App.1986) (Dixon, J. dissenting), we find the form used here to be proper.

First, the MAI provide no definition for the term "consciously disregards." *See* MAI–CR 3d 333.00. Second, we were not able to find a definition of this term in our statutes, although it is used in the statutory definition of reckless. *See,* § 562.016.4. To us, this indicates the drafters of our instructions and our General Assembly found the term was in common enough usage not to require a definition. We agree.

Arguably, the jury in this case refuted this conclusion by asking for a further definition of the term. However, this jury was not chosen as a cross-section of the population for purposes of defining "consciously disregards" or deciding whether such a definition is necessary.

In her final Point, defendant complains of several rulings by the trial court. Defendant's arguments are neither clear nor explicit, amounting to little more than descriptions of trial court actions followed by a general discussion of the admissibility of circumstantial evidence. We will address each argument as we understand it.

First, defendant complains of the trial court's ruling on Exhibit A, a letter from an attorney hired by the victim's parents to represent them in a civil case against defendant. Defense counsel showed the letter to Mrs. Lange, the mother of the infant, after she admitted she and Mr. Lange had hired an attorney. The state objected to the letter because it had not been authenticated. The trial court sustained the objection. Then, after Mrs. Lange testified she could not remember when she contacted the attorney, defense counsel, over objection, was allowed to show the letter to Mrs. Lange to refresh her recollection about the time. Apparently, defendant now argues the entire letter was admissible. Defendant's argument is misdirected and, thus, misses the mark.

■ At the close of defendant's case, defense counsel, "out of an abundance of caution," offered for admission all of defendant's exhibits, including Exhibit A. The state made no objection, the exhibits were admitted into evidence, and all were passed to the jury, including Exhibit A. Defendant cannot complain about failure to admit into evidence an exhibit that was in fact received into evidence and passed to the jury. *See State v. Overkamp*, 646 S.W.2d 733, 736 (Mo.1983).

Defendant next complains the trial court improperly refused to admit into evidence Exhibit E, a copy of the petition for Dissolution of Marriage filed by Mr. Lange. This, like Exhibit A, was admitted into evidence.

■ Finally, defendant attacks the trial court's sustention of several of the state's objections to defendant's testimony. The questions defendant cites either ask about the substance of what another person said or lead up to asking what another person said. Defendant did not show the trial court, and does not argue here, how the out-of-court statements were relevant for any reason other than for the truth of what was said. As such, they are inadmissible hearsay. *State v. Beck*, 673 S.W.2d 122, 126 (Mo.App.1984), and the trial court properly sustained the state's objections to them. *Id.*

Judgment Affirmed.

SMITH, J., concurs.

GRIMM, J., dissents in separate dissenting opinion.

### APPENDIX

### INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 1987, in the County of St. Louis, State of Missouri, the defendant caused the death of Jessica Lange by shaking her, and

Second, that defendant recklessly caused the death of Jessica Lange,

then you will find the defendant guilty of involuntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of involuntary manslaughter.

In determining whether the defendant recklessly caused the death of Jessica Lange, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk she will cause death and she consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

If you do find the defendant guilty of involuntary manslaughter, you will assess and declare one of the following punishments:

1. Imprisonment for a term of years fixed by you, but not less than one year and not to exceed seven years.

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

3. Imprisonment for a term of years fixed by you, but not less than one year and not to exceed seven years and in addition a fine, the amount to be determined by the Court.

4. Imprisonment in the county jail for a term fixed by you, but not to exceed one year and in addition a fine, the amount to be determined by the Court.

5. No imprisonment but a fine, in an amount to be determined by the Court.

The maximum fine which the Court may impose is $5,000.

GRIMM, Judge, dissenting.

I agree with the majority that the trial court erred in not granting defendant's request for the court to assess the punishment. I would not construe *State v. Hunter*, 586 S.W.2d 345 (Mo. banc 1979), as broadly as the majority. Rather, *Hunter* should be confined to its facts. I further disagree with their conclusion the error was not prejudicial. Therefore, I respectfully dissent.

### I.

The day before the trial began, defense counsel hand-delivered to the prosecuting attorney's office defendant's written request that, "pursuant to Section 557.036, R.S.Mo.1981, ... the Court assess the punishment in case of a finding of guilt." On the morning of trial, in chambers, the written request was brought to the attention of the trial judge. In response to defense

counsel's request for a ruling on the request, the trial judge said:

"The Court has indicated that motion is filed and has deferred its ruling on the merits of the motion and reserved its ruling and is cautioning and advising counsel for both sides, they are free to qualify the jury on the issue of punishment. The Court is uncertain what its ruling is going to be but is presently inclined to deny the motion, most probably will deny the motion but I'm not making a ruling at this point."

As the majority notes, a trial judge does not have discretion to either grant or deny the request. A timely, written request must be granted.

The statute provides for the request to be made "prior to voir dire." The reason for this timing is apparent. In voir dire, attorneys often qualify the jury on the range of punishment. If the jury is not going to assess the punishment, the range of punishment is not relevant or material.

Here, the trial court not only did not sustain the request, it advised "counsel for both sides, they are free to qualify the jury on the issue of punishment." The State took advantage of the trial court's advice. The State told the jury the range of punishment, and verified that all the jurors could consider the entire range of punishment. Defense counsel did not mention the range of punishment.

At the conference on instructions, the defendant's request was brought up again. The trial judge said he had "reviewed and continued to consider the motion." Continuing, he said

"The Court expressed its prior reservations about that motion and now conditionally grants the motion of Defendant

but nevertheless intends and authorizes and directs that the issue of punishment be submitted to the Jury pursuant to Paragraph 5 of Section 557.036, and the Court intends to treat that as an advisory verdict and intends to assess the punishment notwithstanding whatever punishment the Jury may assess."

Defense counsel objected to the court's instructing on the punishment. Counsel told the court the granting of the request "is a mandatory requirement, and I think it is therefore improper to instruct the Jury on punishment."

Contrary to the trial court's statement that punishment may be submitted pursuant to § 557.036.5, that section directs a trial court not to seek advisory verdicts. The section is clear: "The court *shall not* seek an advisory verdict." [1] (emphasis added).

When the trial judge said which instructions and verdict forms he was going to give, defense counsel again objected. Defense counsel stated, "We object to Instruction 5 also for the reason that it contains starting with the words 'If you do find the Defendant guilty of involuntary manslaughter,' subsequent language dealing with punishment which in the view of our pre-voir dire motion under Section 557, we believe to be inappropriate. We object to the form of verdict which sets forth the option for punishment for the reasons given."

Defendant's motion for new trial properly preserved her objections. It was overruled. At sentencing, the trial court said:

"I have been requested by the Defense to undertake the sentencing in the event the Defendant was found guilty, and *in*

---

1. Section 557.036.5 refers only to prior, persistent, or dangerous offenders; there is no mention of defendants who make written requests. The legislative history discloses the reason.

Prior to 1981 statutory amendments, a trial court did not determine a defendant was a persistent or dangerous offender until after the defendant was found guilty. § 558.021, RSMo 1978. As to these defendants, trial courts were required to advise the jury of the range of punishment and have the jury assess the punishment. See MAI–CR 2d 2.60, withdrawn effec-

tive June 1, 1983. If a defendant was found to be a persistent or dangerous offender, the jury's verdict was disregarded.

Such was not the case with defendants filing a written request for court assessment of punishment. In MAI–CR 2d, How to Use This Book, p. XX, the user was told that if the jury is not asked to assess the punishment, "the punishment alternatives will, of course, be omitted from the state's verdict directing instructions." See also § 557.036.2, RSMo 1978.

an effort to gain consensus of the conscience of the community, *I submitted a punishment to the Jury* in the event they found the Defendant guilty. The jury in an advisory capacity said six months imprisonment and a fine to be determined by the Court.

\* \* \* \* \* \*

It's my unpleasant obligation and duty to sentence her to imprisonment for a period of six months and *follow the Jury's recommendation.* For taking the life of another, six months is insignificant, and we have this freshly convicted person in front of me, I would have had to consider imposition of a more severe punishment up to seven years, I think is the punishment, but the Jury had compassion, as I do, for the Defendant and I also have compassion for the little girl who isn't here anymore, and so Mary Burke stands convicted and under the law is susceptible to punishment." (emphasis added).

## II.

"The court shall instruct the jury as to the range of punishment ..., unless (1) The defendant requests in writing, prior to voir dire, that the court assess the punishment in case of a finding of guilt." § 557.036.2, RSMo 1986.

This statute, as stated in the majority opinion, "[s]ensibly read", prohibits a court from instructing the jury on the range of punishment upon defendant's timely, written request. At 394. No dispute exists as to that issue. Rather, the question is what effect is given to a trial court's violation of this statute.

Prior Missouri cases give us guidance. "[S]tatutes should be construed so as to give effect to legislative intent and avoid absurd and meaningless results." *City of St. Joseph v. Hankinson,* 312 S.W.2d 4, 10 (Mo.Div.2 1958). Yet, as the majority recognizes, applying prior case law "effectively destroys the purpose of the statute." At 396.

"[I]t is presumed that the legislature does not enact meaningless provisions."

*Bartley v. Special School Dist. of St. Louis City,* 649 S.W.2d 864, 867 (Mo. banc 1983). If § 557.036.2 can be violated with impunity, the provision is meaningless. "The General Assembly is never presumed to have committed a useless act." *State v. Bachman,* 675 S.W.2d 41, 45 (Mo.App.W.D. 1984).

## III.

The majority believes two cases are controlling, *State v. Hunter,* 586 S.W.2d 345 (Mo. banc 1979) and *State v. Wood,* 662 S.W.2d 876 (Mo.App.W.D.1983), and therefore they "are constrained to find no prejudice occurred." At 396. The holding in those cases does not require or authorize this court to say the General Assembly "committed a useless act." *Bachman,* 675 S.W.2d at 45.

Neither *Hunter* or *Wood* involve a request by a defendant that the court, rather than the jury, assess punishment. In *Hunter,* a case tried before the effective date of The Criminal Code, defendant was charged with stealing as a second offender, pursuant to § 556.280, RSMo 1969.

At that time, the first edition of MAI–CR was in effect. Pursuant to applicable Notes on Use to MAI–CR, the trial court's instructions included the range of punishment. The jury found defendant guilty and assessed his punishment at one year. Thereafter, acting under the Second Offender Act, the trial court assessed a five year sentence.

Hunter contended the inclusion of the range of punishment in the instructions misled the jury to believe he would serve only the time it assessed. *Hunter,* 586 S.W.2d at 347. Hunter's arguments were rejected.

Two significant comments appear in *Hunter.* First, "the trial court had adhered strictly to the 'clear' directive" of the applicable MAI–CR Notes on Use. *Id.* As a "court of error", an appellate court is hard pressed to say a trial court errs when it follows the applicable Notes on Use and does not violate any statute.

Second, the *Hunter* court recognized the misleading nature of the instruction, and suggested "amendment of the new instructions may be in order to avoid any confusion." *Hunter*, 586 S.W.2d at 349. The court's opinion concludes by asking its committee on pattern criminal charges and instructions to "review the applicable instructions in light of the views set forth in this opinion." *Id.* Such a request is not a ringing endorsement of the applicable instructions.

Four years later, our Western District colleagues decided *Wood*. Wood was charged with assault as a prior offender. At the time of his trial, MAI–CR 2d 2.60 and its Notes on Use mandated that the jury be instructed on the range of punishment. However, the General Assembly, in 1981, had amended § 557.036. The amendments provided that the jury was not to be advised of the range of punishment.

Between September 28, 1981, the effective date of the amendments to § 557.036, and June 1, 1983, the date when the supreme court withdrew MAI–CR 2d 2.60, "trial courts were confronted with the dilemma of a conflict between MAI–CR2d and the statute." *Wood*, 662 S.W.2d at 878. In *Wood*, the trial court chose to follow MAI–CR 2d 2.60.

The *Wood* court, as does the majority here, said it was "constrained" by *Hunter* to hold the erroneous instruction was not prejudicial. *Id.* As in *Hunter*, the trial court followed the applicable supreme court instructions and no trial court error was found.

Given the instructional dilemma existing in *Hunter*, its holding and teaching should be confined to its facts. *Wood*, which follows *Hunter*, should likewise be so confined. Those cases should not be used as authority to emasculate the statutory right of a defendant to have the trial court assess punishment.

I recognize the rationale set forth in *Hunter* that a jury is presumed to follow instructions and to therefor consider guilt before it reaches the punishment factor, if applied here, supports the majority position. In the context of a criminal trial, I find it difficult to apply such a ritualistic approach.

The jury has all instructions read to it at once and receives them all together. It is unrealistic to conclude that a jury having difficulty agreeing on guilt will not, as a means of compromising that difficulty, turn to the issue of punishment in order to arrive at a verdict.

One of the reasons for requesting sentencing by the trial court is to prevent just such a compromise. The *Hunter* rationale is a denial that compromise verdicts in criminal cases such as this exist. I am unable to accept that denial. Erroneously allowing a jury to consider punishment where the defendant has requested court sentencing denies a defendant the opportunity to prevent a compromise verdict on guilt and is presumptively prejudicial.

Here, the trial court deviated from following MAI–CR 3d 304.08 and its Notes on Use. "Any deviation from the approved instructions is presumed prejudicial unless the contrary is clearly shown." *State v. Petary*, 781 S.W.2d 534, 542 (Mo. banc 1989). The "burden is on a party deviating from the approved instruction to show the deviation was not prejudicial." *State v. Potter*, 747 S.W.2d 300, 306 (Mo.App.S.D. 1988).

A recommended punishment of six months for the killing of an infant gives at least the appearance of compromise. Nothing of record demonstrates the absence of compromise. Nor has the State, who has the burden to show the deviation was not prejudicial, sustained its burden.

In the absence of the punishment instruction, it is well possible that defendant would have been acquitted, or at least, the jury would have been unable to reach a verdict. The instruction, therefore, may well have prejudiced the defendant.

That the trial court "would have had to *consider* imposition of a more severe punishment" than that recommended by the jury in the absence of their recommendation does not, as the State contends, obviate the prejudice which results from a compromise of defendant's guilt. (emphasis

added). *State v. Reed,* 640 S.W.2d 188, 193 (Mo.App.W.D.1982) is not, therefore, applicable.

The State has not met its burden to show the deviation from MAI–CR 3d 304.08 and § 557.036.2(1) was not prejudicial. The presumed prejudice for violating MAI–CR 3d and § 557.036.2(1) is sufficient to entitle defendant to a new trial.

The judgment should be reversed and defendant should be granted a new trial.